**Judith E. MORRIS, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D., Acting Commissioner of Social Security, Defendant.**

**No. 95–1089–JTM.**

United States District Court, D. Kansas.

Dec. 9, 1997.

David H. M. Gray, Gragert, Hiebert & Gray, Wichita, KS, for Plaintiff.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This is an action for recovery of social security disability benefits. Morris's claim

was denied twice by ALJs. The first denial was appealed to this Court, where Judge Patrick F. Kelly remanded the case on Morris's request for consideration of additional evidence. Another ALJ then considered the additional evidence, but again denied Morris's claim. For the reasons identified herein, the court finds the decision should be upheld.

Morris was born August 2, 1944. She has the equivalent of a high school education. She has worked as a Certified Medication Aide (CMA) and a Certified Nurse's Aide (CNA).

Morris filed applications for Disability Insurance Benefits and Supplemental Security Income payments in 1990. These applications were denied, and no request for reconsideration was filed. Morris filed a new claim for disability benefits on March 19, 1993 (adding a request for SSI payments on July 26, 1993), a claim which alleged disability due to residual pain from a broken leg, a bad back from lifting, depression, migraine headaches, and hypertension. Although she alleged she became disabled on February 1, 1993, the ALJ's initial decisions noted that Morris continued in substantial gainful activity until June 2, 1993 (R. 16).

Morris was examined by Dr. Daniel Thompson in April of 1993. She told him that she had fractured her right fibula in 1993 after falling in a parking lot, and that the injury required open reduction and internal fixation. She also reported that her back hurt because of spinal blocks used in childbirth. Morris told Dr. Thompson that she was unable to lift or bend, and could not stand or walk for more than an hour or two. She said she could ride in a car for a few miles, and could sometimes lift 50 pounds. She also said that, about once a month, she would have migraine headaches that would last for about three days.

Dr. Thompson examined Morris and found a full range of motion in all joints, with some pain in the back, left thumb, and right ankle. Right-sided paraspinus muscles spasm was present. Morris had mild difficulty in getting on the exam table, and in heel-to-toe walking, squatting and rising, and hopping. Morris related well to Dr. Thompson, and

said she did her own shopping, cooking, and cleaning. Sensation and reflexes were normal. (R. 17). Dr. Thompson diagnosed "Multiple arthralgias," elaborating:

> The patient has a history of joint discomfort at the base of the left thumb, lumbar region, and right ankle. Grip strength is slightly diminished in the left hand. Dexterity appears preserved. Gait is small-stepped, favoring the left side. Station is stable. I do find right-sided paraspinus muscle spasm, exacerbated by extension of the toes. There is mild difficulty with orthopedic maneuvers. No radiculopathy as assessed by reflex, sensory, or motor findings.

(R. 197).

On June 2, 1993, Morris reported to the Wichita Broadway Medical Clinic that, while working at the Catholic Care Center, she hurt her back while lifting a large patient. Dr. R.B. White treated Morris, diagnosing a possible lumbar sprain or strain on June 9, 1993. She was released to return to full duty the same day, with the restriction that for the next week she should not lift more than five pounds.

Morris allegedly re-injured her back six days later when, in spite of the restriction, she again lifted a patient. Dr. White's diagnosis was again the same, and Morris was again released with a five-pound lifting limit. She was also referred for physical therapy.

On July 6, 1993, Morris was released to full duty with a 25–pound lifting limit. Physical therapy was stopped on July 16, 1993 at Morris's request. Morris was scheduled to return to see Dr. White in August, but called a few days before the appointment to say she had too much to do. When Morris did not appear for any appointment within the next few weeks, her case was closed.

Morris was again examined by Dr. Thompson on September 29, 1993. She told him of her migraines, and leg and back injuries. She said she could stand for only two hours, walk for one, and occasionally lift 20 pounds. She could ride in a car for 80 miles. She also told him that she had been injured in a car accident in June of 1993, spraining her right shoulder. Dr. Thompson's exam revealed a

normal range of motion in the joints except for flexion of the dorsolumbar spine. All joints were free of tenderness, erythema, and effusion except for some pain in the lumbar spine. No paraspinus muscle spasms were noted. Dr. Thompson reported Morris had "moderate difficulty with orthopedic maneuvers" and had suffered a prior leg break "without residual." (R. 202).

In connection with her workers compensation claim against Catholic Care Center for her back injury, Morris was examined on November 23, 1993 by Dr. Ernest Schlachter. Morris reported the June, 1993 car accident, but stated she was wearing a seat belt and that the accident did not aggravate her back injury.

Morris told Dr. Schlachter that she had severe and constant pain, and had only a limited ability to exert herself. She could sit for less than two hours and walk for less than two blocks. She said she could lift only 8 pounds. A physical exam revealed Morris could do most orthopedic maneuvers with little or no pain, and mostly without guarding. Morris refused to have X-rays taken, stating X-rays had been taken at the time of the car accident. Dr. Schlachter checked and found the hospital X-rays were normal. Dr. Schlachter diagnosed "[n]o objective evidence of residual injury to the lumbar spine arising out of any work related activities." (R. 236). He concluded:

> I find it disconcerting that this individual would tell me that she went to the Emergency Room at Wesley Hospital complaining of only a whiplash injury to her neck and a injury to her shoulder, and the Wesley Emergency room did not x-ray her cervical spine, but did x-ray her shoulder and also x-rayed her lumbar spine. It is also suggestive that her subjective complaints of pain may be related to the automobile accident rather than to anything that happened to her at work. She does admit that she did improve significantly following her initial treatment with Dr. White and prior to her returning to work. In either event her physical examination

would indicate that she has fairly well recovered from both injuries.

(Id.)

In November, 1993, Morris went to Kerin Schell, Ph.D., for a one hour consultation. Morris completed some forms and was interviewed by Dr. Schell, who also conducted a follow-up interview in April of 1994. Dr. Schell wrote a one-page report finding Morris had a disabling mental disorder which consisted of "Major depression, Somatoform pain disorder, Insomnia and Undifferentiated attention deficit disorder." (R. 227). Schell noted that Morris "has been depressed since 1960 when she first started having marriage problems." (Id.).

In early 1994, Morris was seen at the Wesley Family Practice Clinic, complaining of back pain. The examining staff member opined she might have lower back strain, and was treated conservatively with 800mg Motrin. At a follow-up visit, Morris said she was doing well and that her back problem was better. The doctor asked to have X-rays taken, but Morris declined without stating why.

Morris has not been hospitalized for any of her physical ailments with the exception of the three-day hospitalization when she broke her leg slipping on some ice in 1989. (R. 50). She did physical therapy for about three weeks after the cast was removed. (R. 51). In the April 26, 1994 hearing conducted by the ALJ, Morris was asked about her daily routine and testified:

> I get the children up for school, help them with their breakfast and after they're gone, then I lay back down for maybe an hour. Then I'll get up and maybe straighten up the house, do what I'm able to. I'll watch a little TV or read, and then I usually lay back down in the afternoon. And then I help, my husband helps me get the supper about 2:00 and the children get home abut 3:30 and he feeds them supper. My daughter does the dishes. I usually watch TV till about 7:30, 8:00, then I'll lay back down. And I usually get up two, three times a night.

(R. 54).

Morris testified her daughter does the housework. (R. 57). Morris goes to the

grocery store about once a week; her husband carries the packages. (R. 58). She can dress herself, but testified she "can't wear high heels any more because of my leg." (Id.). She can lift about five pounds without a problem. She testified she can walk about a block before she has to stop and rest; stand about twenty minutes before she has to sit; and sit about half an hour before she has to get up. (R. 59). She is not on any psychiatric medication. (R. 66). As to her depression, she testified she has suffered from it for "a lot of years" which she quantified as "probably 30" years; she affirmed she was able to work throughout that period. (Id.).

Morris testified she did not believe she could return to her work as a CMA or CNA, stating "CMA, I've lost my certificate and I'd have to go back to, through the school to get it back and the CNA, I couldn't do the lifting now." (R. 56).

The ALJ concluded that "[b]y no stretch of the imagination can psychologist Schell be classified as a 'treating source' of information." (R. 19). The ALJ premised this conclusion on at least four considerations. First, he noted Dr. Schell had only extremely limited exposure to Morris in the limited interview, and that Dr. Schell's one-page report reflected a failure to "scrutinize[] and evaluat[e]" Morris's statements. (R. 20). The ALJ wrote:

> Dr. Schell's conclusions as to psychological impairments present are not supported by any objective psychological testing commonly used in the field of clinical psychology and which have been accepted by the scientific community. An inherent feature of the traditional tests used in clinical psychology are safeguards designed to detect false responses and people who are exaggerating and/or malingering. No explanation is given for the lack of testing.

(Id.).

Second, the ALJ noted Dr. Schell's report was premised on inaccuracies which were in one instance (Morris's statement that she was "not able to work" since her back accident on June 2, 1993, although she was released to return to work after that date) found to be "glaring." (Id.).

Third, the ALJ found Dr. Schell failed to consider evidence inconsistent with his diagnosis. For example, during 1994 Morris was treated by doctors at the office of Dr. Nancy Zidek, MD, on January 19, February 17, March 4, and April 19 for problems including tobacco use, viral infection, low back strain, and hypertension. During these meetings Morris apparently never mentioned any symptoms of depression.

Fourth, the ALJ noted the history of Morris's relations to Dr. Schell. Morris first saw Dr. Schell on November 14, 1993, after she had filed her claim for benefits and retained her counsel at that time (Harry Eddy). The office note of the visit reflects nothing beyond Morris's statement of her history. Dr. Schell saw Morris for about one hour, and then did not see her again for another four months. During that time, despite having diagnosed a "major depression" at the first meeting, Morris received no treatment for depression during the intervening period.

The ALJ found Morris took no medicine for depression. Further, he noted the alleged depression had lasted over 30 years, but Morris was able to work throughout this period. The ALJ found that Morris "has testified to a number of limitations and pain which, if taken as true, would significantly interfere with her ability to work." (R. 22). After stating the relevant standards for reviewing Morris's claim, the ALJ ultimately found:

> the claimant's testimony is not fully credible with regard to the degree of pain and limitations she expresses she suffers. While there is objective medical evidence which indicates that a medically determinable impairment possibly exists which could [or] might produce pain and/or other symptomatology, the totality of the subjective and objective evidence does not indicate that the claimant should, or does, experience pain at the level she expresses. . . . Claimant's testimony and the record are full of inconsistencies and exaggerations. Her testimony was self-serving, and if claimant were as limited as she testified to, she would be an invalid. She has taken normal, every day aches and

pains and magnified them completely out of proportion.

(R. 23–24)

The ALJ found that while Morris might suffer an "impairment," she had not demonstrated it was sufficiently severe to justify a finding of disability in limiting her ability to do basic work activity:

There is simply no support in the record to indicate that claimant's various ailments have not resolved within a few days after their inception. Claimant has been released to return to work, she requested discontinuation of physical therapy, she refused to have x-rays done on 2 separate occasions, and she failed to mention any complaints of major depression to any of her treating and examining **physicians.** Her doctors have never limited her for any extended period of time (certainly not twelve months, which is the duration threshold), and have not even given claimant a diagnosis of a medically determinable impairment in her back which would be expected to produce the pain she complains for the length of time she reports she has experienced it.

(R. 24) (emphasis in original)

Following the denial of her claim, Morris raised the issue on appeal, but eventually filed a motion to remand the case for consideration of additional evidence. The defendant concurred in the motion to remand. In a December 1, 1995 Memorandum Order, the District Court remanded the case for further proceedings "[c]onsistent with the agreements of counsel." The court otherwise made no findings in the case.

On February 22, 1996, the Appeals Council vacated the earlier ALJ decision, and remanded the case for the consideration of additional evidence. A new ALJ heard the case on August 5, 1996. The ALJ ultimately concluded that Morris was not able to return to her prior employment, but that she was able "to make an adjustment to other work which exists in significant numbers in the national economy." (R. 280).

The ALJ first took up Dr. Schell's August 13, 1995 psychological evaluation of Morris. This evaluation, the ALJ noted, was predicat-

ed on 3.5 hours of testing performed on December 19, 1994 and 4.5 hours performed on January 17, 1995. The ALJ stated:

It is noted that the office records submitted by Dr. Schell did not indicate an office visit on January 17, 1995. The last record was February 22, 1995 noting that the claimant's physician refused to prescribe depression medication.... Dr. Schell changed his diagnostic impression to major depressive disorder, severe without psychotic features; pain disorder associated with both psychological factors and general medical condition; personality disorders; schizoid personality disorder, severe; and avoidant personality disorder, moderate.

(R. 283). Dr. Schell also reported Morris informed him she had been sexually assaulted at the age of 21. However, the ALJ noted that Morris had not required any mental health treatment or affected her ability to work "in the intervening 28 years." (Id.).

Morris received a psychological evaluation on March 9, 1995 by Fred deWit, Ph.D. Morris told deWit that she "feels sad and downcast, also listless, unable to sleep, worrying all the time." (R. 377). Dr. deWit reported that "[t]he onset of her troubles was 10 years ago after her father died." (Id.). Dr. deWit concluded:

This person is able to relate to co-workers and supervisors, although, she does not enjoy interpersonal interaction from my observations in the office. She is able to understand and perform simple tasks in an average amount of time. Concentration appears to be poor and she may be unable to keep this up for an 8–hour daily routine activity. She appears able to keep a work schedule with average performance demands but seems very poorly motivated to mobilize her energy. She is able to manage her own funds.

(R. 379). Dr. deWit diagnosed dysthymic disorder, and ruled out either major depression or attention deficit disorder.

Morris has developed high blood pressure which she manages with medication. An examination of Morris in March of 1995 by Dr. Edward Lee found that Morris

shows pain in the lumbar region, restricted range of motion without evidence of paraspinus muscle spasm. The patient has suffered a prior right ankle fracture. I do not find any asymmetrical reflex or sensory changes. There is weakness in the right upper as well as lower extremity as described, mostly give way in nature. No obvious motor atrophy appreciated.

(R. 383).

Morris testified before the ALJ that she had a "sharp pain" in her lower back, which "hurts all the time." (R. 426–27). She testified that she can walk "maybe, a fourth of a block." (R. 429). She has pain in her right hand after the fracture, because "it wasn't set right." (R. 430). She gets migraine headaches about once a week, which last about eight hours. She treats her condition with Extra Strength Tylenol, ice packs, and resting in a dark room. She lives with her son and daughter-in-law and testified her marriage is ending.

The ALJ concluded generally after reviewing all the evidence in the case that Morris "has a pain producing impairment and that there is at least a loose nexus between the impairment and the allegations of pain." (R. 285). The ALJ ultimately concluded that Morris was unable to return to her prior work, but was not disabled because she was able to perform other, light sedentary work in the economy. This conclusion was based on a finding that Morris's claims as to the severity of her impairment were not credible or supported by medical evidence. The ALJ wrote:

> The evidence indicates that the claimant does suffer with multiple arthralgia and depression, however, the alleged severity of the pain and limitations is not supported by medical documentation. X-rays of the shoulders and spine are essentially normal. Although the claimant stated that she has suffered from migraine headaches for the past 30 years, this is not reflected in the medical records nor was it mentioned previously. The claimant had also previously reported that she has been depressed for approximately 30 years which is not reflected in the medical records. The claimant did not mention mental impairments until after she had filed her reconsideration request, providing discrepant dates on when she began mental health treatment. It is noted that the claimant has not sought regular mental health treatment beyond establishing a diagnosis for social security purposes. Further, the records indicate that no medical doctor indicated a need to prescribe psychotropic medication.
>
> It is also noted that the claimant worked at substantial gainful levels most of her life until June 1993. The file indicates that the claimant stopped working on June 14, 1993 and filed for workers compensation which was denied. At the hearing on August 5, 1996, the claimant stated twice that she had previously broken her right (dominant) hand and it was not set properly causing her difficulties with manipulation and numbness. However, at the hearing on April 26, 1994, the claimant stated that she was right handed . . . and testified that it was her left hand which was broken and not set properly and caused her limitations. . . . She stated that the limitations were like arthritis, although she had never been told she had arthritis. The undersigned notes a serious credibility problem when the claimant is unable to consistently describe which hand was broken resulting in pain and limitations.

(R. 285–86).

The ALJ also noted (1) an absence of any medical records indicating Morris received treatment for a hand impairment; (2) that Morris treats her allegedly disabling pain with over-the-counter Tylenol; and (3) that Morris engages in daily activities (cooking, cleaning, doing laundry, shopping, attending church) inconsistent with the sort of severe pain and disabling depression she claims.

The ALJ also found Dr. Schell's opinion of limited use:

> Although Dr. Schell has seen the claimant on occasion since November 1993, he indicated that he had been requested by counsel to evaluate the claimant for social security purposes [and his] records do not include any ongoing treatment or any records after February 22, 1995. He administered some tests with conflicting results and noted that the MMPI was not entirely

valid. He offered different diagnosis on the two evaluations.... His records state that the claimant's treating physician did not feel that psychotropic medication was needed. Dr. Schell's opinions are conclusory and inconsistent with the record as a whole.... The later consultative evaluation completed by Fred deWit, Ph.D. indicted a dysthymic disorder which would not preclude employment.

(R. 287–88).

### Conclusions of Law

■ The Secretary employs a five step process in determining the existence of a disability, *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), a process which ends at any point if the Secretary determines the claimant is disabled or not. The steps, in order, require determinations of whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a medically severe impairment or combination of impairments; (3) has an impairment equivalent to one of a number of extremely severe impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1; (4) is unable due to the impairment to perform his past work; and (5) has the residual functional capacity to perform other work available in the national economy, considering her age, education, and past work experience. *See Kemp v. Bowen,* 816 F.2d 1469, 1474–75 (10th Cir.1987).

■ Under 42 U.S.C. § 405(g), "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Miller v. Chater,* 99 F.3d 972 (1996); *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989); *Kemp v. Bowen,* 816 F.2d 1469, 1475 (10th Cir.1987). Substantial evidence requires the presence of enough relevant evidence that a reasonable mind might consider the Secretary's decision adequately supported. *Richardson,* 402 U.S. at 401. The court must scrutinize the record and take into account whatever evidence fairly

detracts from the evidence supporting the Secretary's findings. *Nieto v. Heckler,* 750 F.2d 59 (10th Cir.1984). An absence of substantial evidence will be found only where there is a conspicuous absence of credible choices and no contrary medical evidence. *Trimiar v. Sullivan,* 966 F.2d 1326, 1328 (10th Cir.1992). Evidence is insubstantial if it is overwhelmingly contradicted by other evidence. *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994); *Ellison v. Sullivan,* 929 F.2d 534 (10th Cir.1990). The function of the district court is to determine whether there is evidence to support the decision of the Secretary, and not to reweigh the evidence or try the issues de novo; if supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.

■ This deferential standard of review does not apply to the Secretary's application of the law. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994); *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984); *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987). Thus, reversal may be appropriate when the Secretary either applies an incorrect legal standard or fails to demonstrate that she relied on the correct legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

■ In determining whether the decision of the Secretary is based on substantial evidence, the court is not to reweigh the evidence or substitute its judgment for that of the Secretary. *Glass,* 43 F.3d at 1395. Thus, the court will typically defer to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1498 (10th Cir.1992). However, the court will not simply "rubber stamp" the decision of the Secretary. *Ehrhart v. Secretary of Health & Human Services,* 969 F.2d 534, 538 (7th Cir.1992). The court must determine if the decision is in fact grounded in the evidence or a mere conclusion, and will give particular weight to evidence of a compelling nature, such as the testimony of a treating physician. *Gossett v. Bowen,* 862 F.2d 802, 805 (10th Cir.1988). Moreover, the court must review the evidence as a whole; substantial evidence will not be found based upon isolated facts in the

record. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800–01 (10th Cir.1991); *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985).

■ The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than 65 years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

■ The burden is on the claimant to prove the existence of a disability that prevents him from engaging in his prior work for a continuous period of twelve months. *Trimiar,* 966 F.2d at 1329. If the claimant makes such a showing, the Secretary must show the claimant is able to do other work in jobs present in the national economy. *See Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993); *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

■ As the court noted earlier, the latest decision of the ALJ must be affirmed. The ALJ's decision appropriately considered all the evidence in the record and applied the appropriate legal standards. Because the ALJ agreed Morris suffered from an impairment which prevented her from returning to her prior employment, the burden shifted to the Commissioner to show Morris had the residual ability to perform other gainful work. The ALJ's decision that this burden was met is supported by substantial evidence. The ALJ's opinion does not ignore any important evidence in the case or to give any evidence improper weight.

■ Although in the present appeal Morris attacks various elements of the ALJ's opinion, the court finds the substance of the opinion was nonetheless based on substantial evidence. Thus, although Morris argues the ALJ erred in discounting the opinion of Dr. Schell, the court finds this decision was not error. There is no indication the ALJ refused to consider Dr. Schell's opinion because Dr. Schell's examination was arranged by Morris's prior counsel. Rather, the ALJ's decision was based on the entire circumstances of the case, including the lack of ongoing treatment of Morris by Dr. Schell, as well as the conflict between Dr. Schell and Dr. deWit as to whether Morris suffered from major depression.

■ The ALJ's problem with Morris's credibility is wholly understandable. In the present appeal, Morris attempts to explain the various inconsistencies in Morris's statements as merely the product of her mental illness. There is no medical evidence to support such a conclusion. Morris asserts she suffers from major depression and attention deficit disorder; there is no claim or evidence she is delusional. Given the clear discrepancies in her statements (when she received treatment, which hand she broke), the ALJ was correct to question her credibility.

Moreover, beyond any question of specific inconsistencies in Morris's statements, her alleged disability is contradicted by her history. In the present appeal, Morris attempts to explain the absence of any previous treatment for mental impairments and the absence of any current prescription anti-depressive or pain medication by speculation, respectively, about the nature of depression and financial ability. These explanations are not persuasive. Although a person suffering from depression can certainly fail to seek medical attention, *see Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996), the fact remains that Morris had repeated contacts with many health care professionals in the years prior to 1994, none of whom diagnosed or reported symptoms of depression. And while Morris asserts she lost her card entitling her to medical assistance, there is no evidence she ever attempted to replace it, or to take any other action to attempt to obtain additional relief.

More importantly, the claim of disability is inconsistent with Morris's work history. Accordingly to Morris, she has suffered from

her medical impairment for over 30 years. The ALJ correctly noted not only the absence of medical treatment for mental illness during this period, but the obvious fact that she was gainfully employed for many years. The court finds the present appeal should be denied.

IT IS ACCORDINGLY ORDERED this 9th day of December, 1997, that the plaintiff's appeal is hereby denied.