**Anita J. DOMINGUEZ, Plaintiff,**

**v.**

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97–4186–SAC.**

United States District Court, D. Kansas.

May 25, 1999.

parties seek and obtain the court's leave to have all or part of the proceedings unsealed.

---

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the plaintiff Anita J. Dominguez's application for disability insurance benefits under Title II of the Social Security Act. The

case is ripe for decision on the parties' briefs filed pursuant to D.Kan. Rule 83.7.

## PROCEDURAL HISTORY

The plaintiff applied for disability benefits under Title II on January 17, 1995, asserting she had been disabled as of January 1, 1989. The plaintiff's insured status under Title II expired on March 31, 1994. Thus, the issue for Title II benefits was whether the plaintiff was disabled after the asserted date of disability, January 1, 1989, and before her insured status expired on March 31, 1994. The plaintiffs application for Title II benefits was denied initially and on reconsideration.

At the plaintiff's request, a hearing before an administrative law judge ("ALJ") was held on May 7, 1996, and she appeared in person and with counsel. (Tr. 39–95). At the hearing, the plaintiff amended her onset date of disability to March of 1989. (Tr. 46). The claimant and a vocational expert testified at the hearing. The ALJ issued his decision on May 30, 1996, finding that the plaintiff was not disabled as defined under the Social Security Act anytime after the onset date and before the expiration of her insured status. After receiving additional medical evidence from the claimant,[1] the appeals council denied the plaintiff's request for review. (Tr. 3–4). Thus, the ALJ's decision stands as the Commissioner's final decision. *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citing *See* 20 C.F.R. § 404.981).

For purposes of understanding the arguments and evidence advanced here, it should be noted that the plaintiff also applied for supplemental security income benefits under Title XVI on January 17, 1995. The plaintiff protectively filed a second application for Title XVI benefits on December 12, 1995, which were denied initially and on reconsideration. The same ALJ separately considered and decided her Title XVI applications. The ALJ in

December of 1997, following a hearing in October of 1996, found that the plaintiff had been under a disability since December of 1995 and that this disability had continued at least through the date of his decision.

## STANDARD OF REVIEW

■ The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Persales,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). "A finding of '"no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" *Trimiar v. Sullivan,* 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983)) (quoting *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir.1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d at 858 (citation omitted).

■ The court's review also extends to determining whether the Commissioner applied the correct legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Besides the lack of substantial evidence, reversal may be appropriate when the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

■ The court's duty to assess whether substantial evidence exists:

> file on the plaintiff's Title XVI application along with the recording from that hearing held on October 22, 1996. (Tr. 5).

1. The additional evidence consisted of Dr. Daniel Thompson's report dated February 3, 1996, Dr. Roger Jackson's letter and progress note dated December 3, 1996, and the entire

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' " *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court "must examine the record closely to determine whether substantial evidence supports" the Commissioner's determination. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996). The court is not to reweigh the evidence or substitute its judgment for the Commissioner's. *Glass v. Shalala*, 43 F.3d at 1395. The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). Nonetheless, " '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence . . . .' " *Winfrey*, 92 F.3d at 1020 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)). The courts do not mechanically accept the Commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the" Commissioner. (citation omitted)). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). " 'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the . . . [Commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.' " *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir.1994) (quoting *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than 65 years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The claimant has the burden of proving a disability that prevents him from engaging in his prior work for a continuous period of twelve months. *Trimiar*, 966 F.2d at 1329. The burden then shifts to the Commissioner to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The Commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). This process comes to an end if at any point the Commissioner determines the claimant is disabled or not. *Gossett*, 862 F.2d at 805. Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder in step two decides whether "the claimant has a medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287. Step three entails looking at whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, step four re-

quires the claimant to show that because of the impairment she is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988).

## ALJ'S FINDINGS

In his order of May 30, 1996, the ALJ made the following findings:

1. The claimant met the earnings requirements of the Act on March 1, 1989, the alleged onset date, and continued to meet them through the date last insured of March 31, 1994.

2. The claimant has not engaged in substantial gainful activity since March 1, 1989.

3. The medical evidence establishes that the claimant has the following severe impairment(s): is status post a right carpal tunnel Syndrome release in January 1992; status post take down of an old fusion L4 through S1 mass, posterior osteotomies of the L4 through S1, S1 root explorations, bilateral implantation of instrumentation at the L3 through S3, bilateral fusion of the L3 through S1, and a right posterior intra-iliac bone graft in June 1992; and is status post a L4 through S1 anterior interbody fusion with strut allografts in January 1994. Nevertheless, she does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404, Appendix 1, Subpart P.

4. The claimant's testimony is not found credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in the claimant's testimony, all of which is discussed more fully in the Rationale section of this decision.

5. The claimant has the residual functional capacity to perform work-related activities except for lifting or carrying more than … 10 pounds maximum and 5 pounds frequently; bending, stooping, twisting, squatting, kneeling, or crawling more than occasionally; climbing ropes, ladders or scaffolds; pushing or pulling more than occasionally; using foot controls; engaging in repetitive fine manipulation with the right upper extremity; working with the arms above shoulder level; working at unprotected heights, around hazardous moving machinery or vibration; being exposed to concentrated cold; and requiring a sit/stand option in competitive employment (20 C.F.R. § 404.1545).

6. The claimant is unable to perform past relevant work.

7. The claimant is a younger individual (20 C.F.R. § 404.1563), and has a limited education (20 C.F.R. § 404.1564).

8. The claimant has no skills which are transferable to skilled or semiskilled work function of work within her residual functional capacity (20 C.F.R. § 404.1568).

9. After considering the vocational expert's testimony in conjunction with the claimant's above described residual functional capacity for a narrow range of sedentary work and age, education, past relevant work and nonexertional impairments, I am persuaded the claimant would be able to make a vocational adjustment to work which exists in significant numbers in the local and national economies.

10. The claimant has not been under a "disability," as defined in the Social Security Act, as amended, since the onset date of disability of March 1,

1989, and through the date last insured of March 31, 1994 (20 C.F.R. § 404.1520(f)).

(Tr. 22–24).

## SUMMARY OF ARGUMENTS

The plaintiff points out the inconsistency in the ALJ's finding that the plaintiff's testimony on her pain and activities was not credible in the Title II hearing in May of 1996 but was credible in the Title XVI hearing in October of 1996. The plaintiff further notes that her chief complaints and medical evidence differed "very little" between the two cases, that the ALJ applied the same criteria for determining disability, and that the plaintiff's condition did not markedly change for the worse after the first hearing. The plaintiff argues that a "substantial majority of the medical evidence presented at the first hearing convincingly shows that the Plaintiff is disabled." (Dk.8). The plaintiff concludes her brief with the contention that the vocational expert's testimony supports a finding of disability.[2]

## ANALYSIS

The court generally summarizes the medical evidence and testimony at this point before tackling the arguments and issues. This case is unusual in that the same ALJ evaluating much of the same medical evidence against the same disability standard denied benefits in a Title II

proceeding, finding that the plaintiff was not disabled at any time from March 1, 1989, through March 31, 1994, but awarded benefits in a Title XVI proceeding, finding that the plaintiff had been under a disability since December 12, 1995. By order of the appeals council, all of the evidence submitted and considered in the subsequent Title XVI proceeding was made a part of the record in the separate Title II proceeding on appeal. The plaintiff focuses her arguments on the incongruent results reached in these two proceedings, while the Commissioner argues the different controlling dates and medical evidence explain the different results. Consequently, the court believes the issue here involves the onset date of disability: Is the Commissioner's finding that the plaintiff was not disabled before December 12, 1995, and specifically not before March 31, 1994, supported by substantial evidence?[3] For purposes of this opinion, the court will limit its discussion and analysis to the facts relevant to this issue.[4]

■ A claimant seeking disability insurance benefits under Title II of the Social Security Act must establish a disability prior to the expiration of her insured status. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir.1996); *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir.1990). It is undisputed that the plaintiff's insured status expired on

---

**2.** It should be noted that the plaintiff's brief is inferior in articulating the relevant issues, summarizing the relevant law, and outlining the pertinent testimony and medical evidence. Even so, the court's duty remains the same: determine whether the Commissioner's decision is supported by substantial evidence.

**3.** In a case involving the onset date of disability, "the relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir.1990). The Commissioner's findings will be upheld if supported by substantial evidence.

**4.** As explained in Social Security Rule 83–20, 1983 WL 31249, the determination of onset

date is important in Title II cases for those benefits may be paid for as many as twelve months before the application date. "[T]here is no retroactivity of payment" of Title XVI benefits. *Id.* "[T]he only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met." *Id.*

To be eligible for Title II benefits, the plaintiff must show she was disabled between the claimed onset date, March 1, 1989, and the date last insured, March 31, 1994. To be eligible for Title XVI benefits, plaintiff must show she was disabled between December 12, 1995, the date she filed her application, and the December 13, 1997, the date of the ALJ's decision.

March 30, 1994. Consequently, the plaintiff cannot qualify for Title II benefits unless she was disabled within the March 1, 1989, through March 31, 1994, time frame. The ALJ found that the claimant was unable to perform her past relevant work during this time frame.

Once the claimant establishes her incapacity to perform her past work before her insured status expired, it becomes the Commissioner's burden to show that the claimant retained the residual functional capacity to do other work that exists in the national economy. *Thompson,* 987 F.2d at 1487. The ALJ then must examine "whether the evidence was *sufficient* for the *Secretary* 'to show that the claimant retain[ed] the . . . RFC to do other work that exists in the national economy,' *Thompson,* 987 F.2d at 1487, prior to the expiration of . . . [her] insured status." *Miller,* 99 F.3d at 976. "Our decision in *Thompson* makes clear that the absence of conclusive medical evidence cannot meet the Secretary's step-five burden, even when a claimant has been found not to be credible." *Miller,* 99 F.3d at 976. "To allow the Secretary to rely on the absence or paucity of medical evidence 'effectively shifts the burden back to the claimant.'" *Miller,* 99 F.3d at 976 (quoting *Thompson,* 987 F.2d at 1491). "This failure to use the correct legal framework is grounds for reversal." *Miller,* 99 F.3d at 976 (citing *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984)).

Social Security Rule 83–20, 1983 WL 31249, Rule 83–20 lists "the individual's allegation, the work history, and the medical evidence" as relevant factors in determining onset date.[5] It also recognizes that the determination of onset date in disabilities of non-traumatic origin may be difficult:

> With slowly progressive impairments, it is sometimes impossible to obtain

medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

1983 WL 31249, at *2. Sometimes, an ALJ may need to obtain the services of a medical advisor to infer a disability onset date. *See Reid v. Chater,* 71 F.3d 372, 374 (10th Cir.1995). When medical records or reports indicate the claimant may be disabled prior to expiration of the insured status, "it is necessary to infer the onset date." *Ott v. Chater,* 106 F.3d 414, 1997 WL 26575, at *2 (10th Cir.1997) (Table). "However, a medical advisor need be called only if the medical evidence of onset is ambiguous." *Reid,* 71 F.3d at 374.

██ The court concludes that the record does not contain substantial evidence to support the finding that the claimant retained the residual functional capacity to perform a narrow range of sedentary work prior to March 31, 1994. Instead, this finding is overwhelmingly contradicted by other evidence of record, in particular, the medical records of the plaintiff's treating physician, Dr. Roger Jackson. In addition, this finding is entirely inconsistent with the ALJ's later finding of disability in the Title XVI proceeding.

It must be emphasized that the ALJ's finding of no disability in the Title II proceeding and his finding of disability in the Title XVI cannot be rationally explained by the evidence of record or by the reasons given in those decisions. For example, the Commissioner argues that in the Title II proceeding the ALJ's findings on

---

5. As to Title II proceedings, Rule 83–20 also comments that "[a]lthough important to the establishment of a period of disability and to the payment of benefits, the expiration of in-

sured status is not itself a consideration in determining when disability first began." 1983 WL 31249, at *1.

the plaintiff's credibility and his review of the medical evidence was restricted to the time frame between March 1, 1989, and March 31, 1994. The ALJ's written decision shows otherwise:

> Considering the medical evidence, claimant's work activity, and claimant's assertions about her activities from March 1, 1989 to the date of hearing [May 7, 1996], I cannot find the allegations of disability and limitations upon claimant's residual functional capacity credible. Indeed, her conduct belies the alleged severity of her impairments and the totality of the evidence persuades me she has exaggerated her symptoms.

(Tr. 21).

The ALJ's written decision in the subsequent Title XVI proceeding discusses only four additional pieces of medical evidence: the opinion of Daniel Thompson, M.D., following a consultative examination on February 3, 1996; the opinion of Sharon McKinney, D.O., following a consultative examination on October 8, 1996; an office note dated December 3, 1996, from the plaintiff's treating physician, Roger Jackson, M.D.; and a narrative report from Bud Langston, a rehabilitation consultant, obtained by the plaintiff. None of this additional medical evidence supports any inferences that the plaintiff's condition first became disabling in December of 1995 and was not disabling prior to March 31, 1994.

The ALJ gave the same description of the plaintiff's severe impairments in both proceedings. In the Title II proceeding, the ALJ gave the following description of medically determinable impairments:

> From March 1, 1989 *through the date of hearing*, the claimant's medically determinable impairments are of such severity to prevent her from: lifting or carrying more than 10 pounds maximum occasionally and 5 pounds frequently; bending, stooping, twisting, squatting, kneeling, or crawling more than occasionally; climbing ropes, ladders or scaffolds; pushing or pulling more than occasionally; using foot controls; engaging in repetitive fine manipulation with the right upper extremity; working with the arms above shoulder level; working at unprotected heights, around hazardous moving machinery or vibration; being exposed to concentrated cold; and requiring a sit/stand option in competitive employment.

(Tr. 21–22) (italics added). In other words, the ALJ believed the above to be the plaintiff's medically determinable impairments as of May 7, 1996. In the Title XVI proceeding, the same ALJ gave the following description of the plaintiff's medically determinable impairments as of December 12, 1995:

> The claimant's medically determinable impairments are of such severity to prevent her from: lifting or carrying more than 10 pounds maximum occasionally and 5 pounds frequently; standing more than 2 hours total during an 8 hour day; she can only occasionally stoop, twist, and climb ramps and stairs; never squat, kneel, crawl, climb ropes, ladders or scaffolds, is precluded from fine manipulation, handling, gripping, working with arms above shoulder level, using foot and hand controls, and working at unprotected heights; she should avoid repetitive pushing or pulling, extreme temperatures, and heights; and she requires a sit/stand option.

(Dk.11, Ex. A, p. 7). The significant differences between these two descriptions is that in the Title XVI proceeding the ALJ added the plaintiff could stand no more than two hours in a work day and "is precluded from fine manipulation, handling, gripping...." (Dk.11, Ex. A, p. 7).

Of the additional medical evidence presented in the Title XVI proceeding, Bud Langston's opinion letter refers to the limitation on standing,[6] but his opinion is

---

6. This same limitation is found in Dr. Zimmerman's letter of May 14, 1995, which the ALJ referenced in the Title II hearing. For some inexplicable reason, the ALJ simply

based on his single interview of the plaintiff and his review of the medical evidence through May 14, 1995. Dr. McKinney's opinion letter refers to the plaintiff's problems with fine manipulation, but her opinion seems to be based on her single interview of the plaintiff and the perceived swelling in the plaintiff's right hand. Both the Langston letter and the McKinney letter were made a part of the Title II record before the appeals council. There is nothing in either letter to suggest that these severe limitations did not exist before March of 1994. In short, the court finds no reasonable basis in the record to account for the different descriptions of medically determinable impairments and for the appeals council's refusal to award Title II benefits based upon the ALJ's disability findings in the Title XVI proceedings.[7]

 Where there is evidence of allegedly disabling pain, courts in the Tenth Circuit look to *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), for the framework of proper analysis:

"We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."

omitted this medically determinable impairment in his decision on Title II benefits.

7. The testimony of the two vocational experts demonstrates the point that the findings and conclusions in the Title XVI proceeding cannot be rationally limited to that application for benefits. When asked the relevant hypothetical questions, the vocational expert in the Title II proceeding concluded that such a person be gainfully employed as a security monitor, an information clerk, or a telephone solicitor, but the vocational expert in the Title XVI proceeding opined there was no work for such a person. When asked to specify which factor weighed most heavily in his opinion, the vocational expert in the Title XVI proceeding said it was the limitations on repeated

*Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995) (quoting *Glass v. Shalala*, 43 F.3d at 1395). If objective medical evidence shows a pain-producing impairment, the ALJ then must consider the plaintiff's allegations of severe pain and decide whether he believes them. *Thompson v. Sullivan*, 987 F.2d at 1489. Factors to be considered at this point include:

"the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony and objective medical evidence."

*Kepler*, 68 F.3d at 391 (quoting *Thompson*, 987 F.2d at 1489).

The ALJ must link his credibility finding to substantial evidence, that is, the ALJ needs to "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Kepler*, 68 F.3d at 391. "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d at 1133 (footnote omitted). The "ALJ 'must articulate specific reasons for questioning the claimant's credibility'

handling and fine manipulation. The vocational expert in the Title II proceeding was not asked this additional question, apparently did not understand the ALJ to have related this limitation on handling and fine manipulation, and did not discuss this limitation. " '[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Winfrey v. Chater*, 92 F.3d at 1024 n. 5 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted)). In short, the vocational expert's testimony in the Title II proceeding does not constitute substantial evidence.

where subjective pain testimony is critical." *Kepler*, 68 F.3d at 391 (quoting *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992)).

The ALJ's findings are inadequate in not linking the evidence with the general credibility conclusion, in not identifying any evidence for the conclusion of inconsistencies in claimant's testimony, and in not discussing even most of the credibility factors on which there is evidence of record. The ALJ's purported findings lack specificity and are nothing more than conclusions. The ALJ's summary of the plaintiff's testimony on daily activities utterly fails to show conduct which in the ALJ's opinion "belies the alleged severity of her impairments." As for pain medication, the ALJ makes no comment about the plaintiff's regular and repeated use of it. He simply notes that there is no evidence of adverse side effects and that there is no evidence of the medications not being "efficacious."[8] The ALJ also commented: "As for treatment other than medication, there is evidence that the claimant was advised to participate in physical therapy but no therapy notes were contained in the record." (Tr. 21). The evidence of record, specifically Dr. Jackson's notes, shows that the plaintiff began an eight-week work conditioning program at the Kansas Rehabilitation Hospital in May of 1994 but that Dr. Jackson removed her from the program because her pain was increasing and she was taking more medication to keep the pain under control. (Tr. 274). Dr. Jackson's notes from his examination on July 4, 1994, state in relevant part:

[Patient] [i]ndicates that her symptoms have significantly increased with the work hardening program.... She indicates constant pain every single day of a severe nature. Because of the pain she is really not able to do hardly anything at all.... Long discussion ensued. I recommended that she try to walk as much as possible and continue to try to lose weight. I feel that she is disabled from any and all work at this time. (Tr. 274). Indeed, the record shows that the plaintiff participated in therapy, that it exacerbated her pain, and that her treating physician[9] terminated the therapy and concluded she was disabled. The court does not find substantial evidence of record in support of the ALJ's purported credibility finding.

The evidence of record demonstrates that the plaintiff carefully limited her activities during the relevant time frame in order to keep her pain under control. As shown in the medical records, the plaintiff experienced only moderate relief after each of the back surgeries and within months after each surgery she began complaining again of pain and seeking additional medical treatment. When the last surgery in 1994 brought her some relief, both the plaintiff and her treating physician had hope of the plaintiff regaining the strength and ability to work again. Only weeks into her work conditioning program, the plaintiff's pain again became disabling and the program was ended. It was at this point, just over three months after her insured status expired, that her treating physician concluded the plaintiff was

8. Dr. Jackson's notes from August 16, 1993, show that the plaintiff was taking Davocet but was still complaining about the pain and "wanted something more for pain." She was given a prescription for Vicodin. (Tr. 279).

9. A treating physician's opinion is entitled to substantial weight and is not to be disregarded unless specific and legitimate reasons are given for doing so. *Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir.1988). The ALJ's written decision offers no reason for ignoring Dr. Jackson's medical opinion expressed just

over three months after the plaintiff's insured status expired. Dr. Jackson apparently reached this opinion based not only after twice operating on the plaintiff's back and treating her for this condition and associated pain since 1992 but also after seeing the plaintiff's inability to cope with the pain exacerbated by the work hardening program. The record offers no substantial evidence to support the ALJ's conclusion that claimant could have held a job during the period of time between March of 1989 and March 31, 1994.

**1182**

"disabled from any and all work." (Tr. 274). Six months later, her physician recommended that she settle her workers' compensation claim and apply for social security disability. The evidence is overwhelming that the plaintiff's back pain and limitation ·on fine manipulation and handling precluded her from returning to any work prior to March 31, 1994.

For all of the above reasons, the ALJ's finding that the plaintiff is capable of performing a narrow range of sedentary work is not supported by substantial evidence. "Because sedentary work is the lowest classification under the statute, there is no need for further proceedings in this matter other than a remand for an award of benefits." *Sisco v. U.S. Dept. of Health and Human Services,* 10 F.3d 739, 745–46 (10th Cir.1993). " 'Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.' " *Sorenson,* 888 F.2d at 713 (quoting *Williams,* 844 F.2d at 760). The evidence of record, as supplemented by the proceedings and evidence from the Title XVI matter, is more than substantial that the plaintiff's impairments preclude her from her past relevant work and from any full-time sedentary work.

IT IS THEREFORE ORDERED that the Commissioner's decision denying Title II disability benefits to the plaintiff is reversed, and the case is remanded to the Commissioner for an immediate award of benefits.