**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 11/1/96**

**TENTH CIRCUIT**

PATRICK K. MILLER,

      Plaintiff - Appellant,

v.

SHIRLEY S. CHATER, Commissioner
of Social Security Administration,[*]

      Defendant - Appellee.

No. 96-7027

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. CV-94-618)**

Submitted on the briefs:[**]

Paul F. McTighe, Jr., and Gayle L. Troutman, Tulsa, Oklahoma, for Plaintiff -
Appellant.

John W. Raley, Jr., United States Attorney; Cheryl Triplett, Assistant United
States Attorney, Eastern District of Oklahoma, Muskogee, Oklahoma; Joseph B.

---

[*]      Effective March 31, 1995, the functions of the Secretary of Health and
Human Services in social security cases were transferred to the Commissioner of Social
Security. P.L. No. 103-296. Pursuant to Fed. R. App. P. 43(c), Shirley S. Chater,
Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health
and Human Services, as the defendant in this action. Although we have substituted the
Commissioner for the Secretary in the caption, in the text we continue to refer to the
Secretary because she was the appropriate party at the time of the underlying decision.

[**]At the parties' request, the case is unanimously ordered submitted without oral
argument pursuant to the applicable rules.

Liken, Acting Chief Counsel; Tina M. Waddell, Acting Deputy Chief Counsel; Randall Halford, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Dallas, Texas, for Defendant - Appellee.

Before **PORFILIO**, **LOGAN** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Claimant Patrick K. Miller appeals from the district court's order affirming the denial of his application for disability insurance benefits.[1] The issue on appeal is whether the record contains substantial evidence to support the administrative law judge's (ALJ) conclusion that claimant was not disabled on or before September 30, 1987, the last date on which he enjoyed insured status under the Social Security Act. We reverse and remand.

## BACKGROUND

Claimant applied for both disability benefits and supplemental security income (SSI) in January of 1989, alleging disability as of July 11, 1986, because of visual impairments. At an administrative hearing on November 9, 1989, claimant, who was then fifty years old, testified that he was blind in the right eye,

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

had long-standing glaucoma in the left eye, suffered peripheral vision loss as a result of the glaucoma, and experienced side effects from Pilocarpine, a glaucoma medication that he used twice a day. II Appellant's App. at 27-31. Among the side effects he mentioned were up to six or eight hours of "vertically decreased" vision, pain, headaches, nose bleeds, occasional nausea, id. at 31, and blurred vision, id. at 34-35.

In a decision dated December 20, 1989, the ALJ found that although claimant had a severe visual impairment due to blindness in the right eye and glaucoma in the left, which, on or before September 30, 1987, prevented him from engaging in his past work as an engineer, the evidence also established that claimant could still perform a wide range of light work on or before that date. Id. at 13-14. He was therefore not disabled prior to September 30, 1987, and was accordingly ineligible for disability benefits. With respect to claimant's SSI application, however, the ALJ found that claimant's severe visual impairment, "complicated by medication side effects," rendered him disabled as of January 10, 1989, the date he filed his SSI application. Id. at 14.[2]

Claimant sought review of the ALJ's decision that he was not disabled on or before the expiration of his insured status. Citing a December 29, 1989 report

_____

[2]     Claimant's SSI application was ultimately denied because he was found to exceed the resource limitations for eligibility. See II Appellant's App. at 236. That decision has not been appealed.

by claimant's treating physician, Dr. Robertson, to the effect that "[claimant] may not have been able to engage in any type [of] work activity prior to January 10, 1989," the district court remanded the case "for the purpose of obtaining additional medical and vocational expert testimony regarding [claimant's] ability to . . . work prior to January 10, 1989." On remand and after two additional hearings, the ALJ found again, in a decision dated July 30, 1993, that claimant was not disabled at any time on or before September 30, 1987. He observed that "[t]he record contains little medical evidence which specifically sets out claimant's functional limitations on or before September 30, 1987," II Appellant's App. at 178. The ALJ concluded that "[a] finding of disability, therefore . . . must be largely based on claimant's own testimony and statements." Id. at 182. He found the evidence "simply overwhelming against claimant on the issue of credibility," and concluded that as of September 30, 1987, claimant had the residual functional capacity (RFC) to perform light and sedentary work that did not require bilateral visual acuity. Id. at 184-86. He further found, based on expert vocational testimony, that despite his impairments there were a significant number of light and sedentary jobs which claimant was able to perform on and before September 30, 1987. Id. at 185-86.

Claimant again sought review of the ALJ's decision. The Appeals Council denied his request. Claimant appealed and the district court affirmed the denial

of benefits, finding "ample evidence in the record to support the ALJ's finding of [claimant's] testimony not being credible." I Appellant's App. at 18. This appeal followed.

## DISCUSSION

In order to receive benefits, claimant must establish his disability prior to the expiration of his insured status. See Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). Once a claimant has demonstrated, as Mr. Miller has here, that he cannot perform his past work because of his disability, "the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Secretary meets this burden if her decision is supported by substantial evidence, id., which claimant alleges is not the case here. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991) (other citations omitted)). In addition to reviewing the Secretary's decision for substantial evidence, we must also determine whether the correct legal standards were applied. See Soliz v. Chater, 82 F.3d 373, 375 (10th Cir. 1996).

On review, we conclude that the ALJ made a number of legal errors in

assessing the evidence pertaining to Miller's alleged disability. In this case, there is an uncontested administrative determination that claimant was disabled from January 10, 1989, the date of his SSI application. There is also, as far as we can discern, no contention by the claimant that he could not perform some limited work prior to mid-1986. At some point between mid-1986, and January 1989, therefore, claimant became completely disabled -- that is, he lost the functional capacity to engage in substantial gainful activity on a sustained basis. If this point pre-dated September 30, 1987, claimant is entitled to benefits; if, however, it came after this date, claimant is not entitled to benefits.

Although the ALJ correctly perceived the timing of claimant's disability as dispositive, he apparently misidentified the party with the burden of establishing that timing. Finding that claimant lacked credibility, a determination with which we have no disagreement, he noted that the "evidence is insufficient to establish that the claimant was under a disability on or before September 30, 1987." II Appellant's App. at 185. Even if this conclusion were correct, which we doubt in light of Dr. Robertson's December 29, 1989, report, the insufficiency identified by the ALJ is not legally dispositive. The claimant had established his incapacity to perform his own past work. Therefore the ALJ should have examined whether the evidence was <u>sufficient</u> for the <u>Secretary</u> "to show that the claimant retain[ed]

the . . . RFC to do other work that exists in the national economy," <u>Thompson</u>, 987 F.2d at 1487, prior to the expiration of his insured status.

In the circumstances of this case, it is the Secretary's burden to show that the point at which claimant became fully disabled was after September 30 1987, not the claimant's to show that that point pre-dated September 30, 1987. The ALJ should not have found against the claimant on the grounds that the medical evidence pertaining to claimant's insured period was "limited" or "insufficient." Our decision in <u>Thompson</u> makes clear that the absence of conclusive medical evidence cannot meet the Secretary's step-five burden, even when a claimant has been found not to be credible. <u>Id.</u> at 1491. To allow the Secretary to rely on the absence or paucity of medical evidence "effectively shifts the burden back to the claimant." <u>Id.</u> This failure to use the correct legal framework is grounds for reversal. <u>Byron v. Heckler</u>, 742 F.2d 1232, 1235 (10th Cir. 1984).

In reversing, however, we note a number of additional legal errors that must be corrected when the evidence is reweighed within the correct legal framework. First, and most significant, it was error for the ALJ to discredit Dr. Robertson's opinion of December 29, 1989. To reject a treating physician's opinion requires "specific, legitimate reasons," <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987), that were not provided in this case. We do not agree with the ALJ's finding that claimant's treatment records undercut Dr. Robertson's opinion,

nor do we think that such a report is appropriately dismissed as "an accommodation to [a] life-long patient." II Appellant's App. at 180; see Frey, 816 F.2d at 515. We are also unpersuaded that later findings of central visual acuity can be used to discredit earlier findings of peripheral vision loss, and medication side-effects. Indeed, the ALJ himself recognized this when he found claimant disabled for SSI purposes, notwithstanding the fact that "claimant's visual acuity, with correction, has remained within normal limits." Id. at 14 (emphasis added).[3]

Second, the ALJ failed to consider the medical evidence of peripheral vision loss. The medical evidence clearly shows that at some point after 1983, claimant began to suffer peripheral vision loss as a result of his glaucoma, see,

---

[3] In further attempting to justify his treatment of Dr. Robertson's December 1989 report, the ALJ noted that he agreed with the opinion expressed therein that claimant "was unable to 'properly conduct his occupation' . . . assum[ing] that Dr. Robertson was referr[ing] to claimant's ability to work as an engineer." Id. at 180 (quoting December report). The ALJ attempts to buttress his assumption by finding it consistent with Dr. Robertson's comments in his April 1989 report, referring to claimant's difficulty "'to perform certain activities in his daily living and his ability to work.'" Id. at 181 (quoting April report) (emphasis added by ALJ). Yet it is the April 1989 report which the ALJ found determinative of claimant's disability beginning January of 1989. The ALJ cannot, without explanation, use the same medical report, first, to justify a finding that claimant is unable to work at all and, then, to support an assumption that a later report by the same doctor is referring simply to his ability to perform past work. The ALJ accepted Dr. Robertson's April 1989 report regarding the disabling side effects of claimant's medication. The medical evidence in the record provides no basis for distinguishing and thus rejecting his December 1989 report, which was obviously submitted to clarify when the difficulties referenced in the April report began.

e.g., II Appellant's App. at 127-28, 151-152, a disorder "characterized by a gradual rise in intraocular pressure, causing slowly progressive loss of peripheral vision . . . ." Robert Berkow, M.D., The Merck Manual 2387 (16th ed., 1992). If the ALJ did not consider this evidence because it dates from after September 30, 1987, that was further legal error. See Baca v. Department of Health & Human Servs., 5 F.3d 476, 479 (10th Cir. 1993) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.") (quoting Gold v. Secretary of Health, Educ. & Welfare, 463 F.2d 38, 42 (2d Cir. 1972)). In light of this evidence, the ALJ's conclusion that, as of September 30, 1987, claimant was limited in his ability to do light work only by a lack of bilateral visual acuity is not supported by substantial evidence.

Third, the ALJ overstepped his bounds into the province of medicine when he concluded that "[i]t would appear that if claimant did indeed experience the degree of side effects he has alleged, there should be evidence of efforts to prescribe a different medication regimen." II Appellant's App. at 180. The ALJ concluded that "[t]his fact is consistent with a conclusion that the medication has

been effective in controlling claimant's glaucoma . . . and [that] it has not resulted in an unacceptable level of adverse side effects." Id. We note that it is also consistent with a conclusion that there is no alternative medical treatment for claimant's long-standing glaucoma. The ALJ's assumption that the medication would not have been used had claimant experienced the alleged side effects does not constitute substantial evidence.

Fourth, it was error for the ALJ to conclude that the claimant's use of Pilocarpine for a period of approximately seven years beginning in 1968 "casts considerable doubt upon claimant's allegations that he began to experience undue side effects [only] when the medication was prescribed for a second time in 1986." II Appellant's App. at 179. There is no indication in the record that the dosage was the same in both instances, and some suggestion (although unexplored) that the dosage may have been increased. See id. at 30 & 514. Even if the dosage were the same, there is no basis in the record for a conclusion that claimant's reaction to the medication will be the same over time. Indeed, the only specific medical evidence on the subject at all is Dr. Robertson's December 1989 report stating that claimant did experience medication side effects when Pilocarpine was started again in 1986. The ALJ may not substitute his own opinion for that of claimant's doctor. See Sisco v. Department of Health &

Human Servs., 10 F.3d 739, 743 (10th Cir. 1993); Kemp v. Bowen, 816 F.2d 1469, 1475 (10th Cir. 1987).

Finally, we do not think that evidence of claimant's driving and employment can provide more than a "scintilla" of support for the Secretary's determination that claimant retained sufficient RFC to perform other forms of work. Claimant's continued driving did not prevent the ALJ from finding complete disability as of January 1989, so it cannot coherently offer much support for the contention that claimant was not disabled. His brief employment at the University of Oklahoma occurred when he had already been determined to be disabled, so it too cannot lend substantial support to a contrary conclusion. Moreover, the record reveals that he was discharged from his employment for "poor performance" rather than "misconduct," which, if anything, would seem to argue in favor of a finding of a disability. II Appellant's App. at 170.

## CONCLUSION

In light of the ALJ's use of an incorrect legal framework, as well as the additional errors noted above, we reverse the district court's decision. Because the appeals court does not reweigh the evidence in social security cases, Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991), we remand to the district court with instructions to remand to the ALJ for further proceedings consistent with this

opinion.  After four administrative hearings, two of which were held pursuant to explicit instructions by the district court to address the period from July 11, 1986, to January 10, 1989, we would caution the agency that "[t]he Secretary is not entitled to adjudicate a case 'ad infinitum until it [sic] correctly applies the proper legal standard and gathers evidence to support its [sic] conclusion.'"  Sisco, 10 F.3d at 746 (quoting Thaete v. Shalala, 826 F. Supp. 1250, 1252 (D. Colo. 1993)).

REVERSED and REMANDED with directions to remand the case to the agency for further proceedings consistent with this opinion.