**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

NICHOLAS T. ARAGON, JR.,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 98-2097
(D.C. No. CIV-97-605-BB/LCS)
(D. N.M.)

---

ORDER AND JUDGMENT  *

---

Before **PORFILIO, BARRETT,** and **KELLY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals from a district court order affirming the Commissioner's finding of nondisability and consequent denial of social security benefits. The Administrative Law Judge (ALJ) determined that exertional impairments limited plaintiff to a "light" residual functional capacity (RFC); that plaintiff therefore could not return to his past relevant work; that, given the absence of significant nonexertional impairments, plaintiff could perform a full range of light work; and that, therefore, the pertinent medical-vocational guideline, or grid, dictated a finding of nondisability. Plaintiff submitted additional evidence of disability to the Appeals Council, which summarily rejected the new evidence and denied review, leaving the ALJ's decision as the final disposition in the case. We review the decision to determine whether it is legally correct and supported by substantial evidence. See Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996). As explained below, we reverse and remand for further proceedings.

Plaintiff filed for Supplemental Security Income benefits in August 1994, alleging disability based on (1) partially controlled but worsening paroxysmal atrial tachycardia (PAT), (2) residual complications from a back injury suffered in 1980, and (3) hearing loss and fluid drainage caused by a gunshot to the right side of his head in 1971. The ALJ held the first two conditions limited plaintiff to a light RFC, which was not further restricted by significant nonexertional limitations associated with any of these conditions (though the ALJ also noted,

-2-

without explanation, that plaintiff could not work around excessive noise, unprotected heights, or moving machinery, <u>see</u> App. II at 17). We have nothing of substance to add with respect to the assessment of plaintiff's back and head injuries, which is consistent with the relevant evidence and controlling law. Rather, our objection to the Commissioner's decision relates to the analysis of the PAT condition, particularly in light of the new evidence submitted to the Appeals Council.

It is clear from the ALJ's decision and the record that plaintiff's primary impairment is the PAT, which has both exertional and nonexertional dimensions. <u>See</u> <u>id.</u> at 13 (ALJ's decision noting plaintiff "attributes his inability to work mostly to frequent episodes of heart palpitations (occurring allegedly up to four days a week and lasting as long as 10 hours at a time) and also dizziness and nausea"); <u>see also, e.g.</u>, <u>id.</u> at 222 (physician's opinion of disability "due to recurrent rapid palpitations, that are associated with nausea and dizziness, with fatigue lasting for hours afterward"). For the reasons that follow, we hold that (1) the ALJ's limited acknowledgment of the exertional dimension of the PAT (reflected in the RFC for light work), while possibly justifiable on the initial hearing record, was undercut by evidence submitted on administrative appeal, and (2) the ALJ's disregard of the nonexertional dimension of the condition was error from the outset, compounded by the Appeals Council's decision.

-3-

**Exertional Limitation**

Discussing plaintiff's PAT, the ALJ concluded that "[e]xtensive treatment notes provided by Kenneth Yamamoto, M.D., [plaintiff's] treating physician . . . do not reveal any significant cardiac findings that support the degree of symptoms and functional limitations alleged by [plaintiff]." Id. at 13-14. This conclusion was based on three observations, none of which support it.

The ALJ noted that "cardiac examinations have indicated a normal heart rate and heart sounds." Id. at 14. However, plaintiff's symptoms would not be seen on cardiac examination unless, instead of seeking therapeutic rest, he actually came in for an examination *during* an episode. In fact, he did that on at least one occasion, when an EKG confirmed his complaint. See id. at 118.

The ALJ also stated that "objective testing, such as electrocardiograms, echocardiograms, and chest x-rays, has been essentially unremarkable, *except for atrial tachycardia [i.e., PAT]* ." Id. at 14 (emphasis added). This comment is clearly not adverse to plaintiff, as the consistently diagnosed and rigorously treated PAT is precisely what his physicians identify as the underlying, operative condition.

Finally, the ALJ indicated that "[s]uch findings [i.e., the objective testing noted above] led Dr. Yamamoto to conclude that [plaintiff] should avoid 'heavy lifting' but could return to 'light' work." Id. at 14. We have searched the record

-4-

and have not located the statement about returning to light work (the ALJ indiscriminately and unhelpfully references three entire exhibits here, including long compilations of treatment notes). There is a statement that plaintiff "is unemployable in his usual line of work as a laborer," id. at 124, from which the ALJ might have inferred the unstated suggestion that perhaps plaintiff could handle another, less rigorous (equals "light"?) line of work. But that inference, and the speculative equation to light work it requires, is clearly too slender a thread on which to base any definitive conclusions about RFC.

Notwithstanding the above objections to the ALJ's stated rationale, we do not think the medical record available to the ALJ would necessarily have ruled out an RFC for light work. The notes and reports submitted prior to the ALJ's decision generally do not touch on the relationship between physical exertion and plaintiff's palpitation episodes. Thus, it is not clear whether light--or any other level of--work would increase their frequency or intensity. Once an episode is triggered, however, the resultant fatigue and consequent need for rest would presumably impact any exertional activity.

In any event, just days after the ALJ issued his decision, plaintiff's treating physician added the following unqualified statement of disability to the medical record: "[The plaintiff] is unable to work in any capacity at this time due to recurrent rapid palpitations, that are associated with nausea and dizziness, with

fatigue lasting for hours afterward; these have been occurring daily." Id. at 222 (June 3, 1996 letter); see also id. at 232 (November 18, 1996 note reiterating same conclusion). Because this evidence was provided to the Appeals Council, it is part of the administrative record for the decision under review and may warrant reversal or remand if it is (1) new, (2) material, and (3) related to the period on or before the ALJ's decision. See O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The evidence qualifies as new and temporally relevant, so the only question is its materiality.

Given that it comes from the same (and only) physician previously relied on by the ALJ for his RFC assessment of plaintiff's PAT condition, this new evidence would appear quite material. While these more recent opinions from Dr. Yamamoto are somewhat conclusory, just like the earlier less definitive reports the ALJ deemed sufficient to rely on, they are based on many previous months' treatment notes. See generally App. II at 205, 223-26 (notes provided post-hearing, dated October 1995 through November 1996, reflecting increased frequency and severity of palpitation episodes and various medicinal measures taken, with uneven success, in response thereto). And, the Appeals Council, which simply "concluded [without explanation] that . . . the additional evidence provides [no] basis for changing the [ALJ's] decision," id. at 4, clearly did not give the "specific, legitimate reasons" necessary to justify rejection of a treating

-6-

physician's opinion, Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (further quotation omitted).

Thus, we therefore cannot affirm the Appeals Council's reflexive confirmation of the ALJ's determination--in the face of contrary new evidence from the same medical authority the ALJ relied on--that the plaintiff had the exertional capacity to do light work. Further, there is a related but even more serious problem here concerning the nonexertional dimension of plaintiff's PAT condition.

**Nonexertional Limitation (Grid Use)**

As previously noted, plaintiff's palpitation episodes involve symptoms such as dizziness, nausea, and generalized fatigue, requiring responsive therapeutic rest, all of which could interfere with work at any exertional level. But, by focusing solely on the RFC question, the ALJ's analysis effectively ignored the nonexertional limitations associated with the plaintiff's condition. Cf. Evans v. Chater, 55 F.3d 530, 532 n.2 (10th Cir. 1995) (reversing denial of benefits where impairment had both exertional and nonexertional consequences and ALJ focused on only one). All we have to review in this regard is the ALJ's unexplained and unsubstantiated conclusion, stated apropos of nothing in particular prior to his invocation of the grids, that plaintiff "has no non-exertional limitations that

significantly compromise the range of work he is capable of performing." [1] App.

II at 16. Even assuming the ALJ had the PAT in mind when making this

statement (which is not evident from the context), there simply is no basis in the

present record for the conclusion that plaintiff's consistently reported and

rigorously treated palpitation episodes, striking (with variability) as often as

several times a week and for as long as several hours, would not significantly

affect his ability to work.

Thus, even on the initial hearing record, the ALJ's indirect rejection of the

nonexertional effects of plaintiff's PAT condition, and hence his reliance on the

grid for light work, is problematic. See generally Thompson v. Sullivan, 987 F.2d

1482, 1488 (10th Cir. 1993) (stating familiar rule that resort to grids is

inappropriate when nonexertional impairments limit claimant's ability to work at

given RFC level). Considering the post-hearing notes indicating a deterioration

of plaintiff's PAT condition, and the treating physician's unequivocal opinion

about its disabling effect, the Appeals Council's summary approval of the ALJ's

decision is plainly insupportable.

---

[1] In his concluding summary of findings, the ALJ did recognize--contrary to
the above quote and again without explanation--some unspecified nonexertional
impairment precluding work "at unprotected heights, or around moving
machinery," App. II at 17, for which dizziness caused by PAT seems the only
possible source.

In sum, while the extant record does not necessarily settle the ultimate question of disability, it does fatally undermine the existing denial of benefits based on the grids. We therefore reverse and remand the case for further proceedings. In particular, the Commissioner should give explicit, responsive consideration to the post-hearing evidence relating to PAT and, if necessary, obtain testimony from a vocational expert about the occupational consequences of plaintiff's palpitation episodes, addressing both their exertional and nonexertional impact.

The judgment of the United States District Court for the District of New Mexico is REVERSED, and the cause is REMANDED to the district court with directions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

James E. Barrett
Senior Circuit Judge