**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 15, 2005**

**FOR THE TENTH CIRCUIT**

TED G. MORRISON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 04-1510
(D.C. No. 03-RB-1318 (PAC))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals from a district court order affirming the Commissioner's decision to deny social security disability insurance benefits. We examine the record as a whole to determine whether that decision is supported by substantial evidence and adheres to applicable legal standards, though the scope of our review is limited to the issues preserved and presented on appeal. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Plaintiff contends that he should have been found disabled under the listing for affective disorder (in particular, depression), 20 C.F.R. Subpt. P., App. 1, § 12.04,[1] based on findings of his treating physician, Dr. Gerd Leopoldt, which he argues were improperly rejected. We affirm for the reasons explained below.

There are two sets of criteria, specified in paragraphs A and B of § 12.04, which must be met before a claimant may be found disabled under this listing.[2] The criteria in paragraph A "substantiate medically the presence of a particular mental disorder," while those in paragraph B describe "functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. Subpt. P., App. 1, § 12.00(A). The presence of a depressive disorder requires the medically documented persistence of at least four of the nine characteristics specified in

---

[1] Citations herein to the Code of Federal Regulations are to those regulations in effect at the time of the administrative law judge's decision in April 2002. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 n.2 (10th Cir. 2004).

[2] Plaintiff does not contend that he qualifies under the alternative criteria set out in § 12.04(C).

§ 12.04(A)(1)(a)-(i). This prerequisite does not appear to be in dispute; the ALJ acknowledged that, "[o]n the basis of claimant's treating psychiatrist's progress notes, the claimant's depression is characterized by an appetite disturbance with change in weight [*id.*, sub. (b)], sleep disturbance [*id.*, sub. (c)], decreased energy [*id.*, sub. (e)], difficulty concentrating or thinking [*id.*, sub. (g)], and feelings of guilt or worthlessness [*id.* sub. (f)]." R. Vol. II, at 16; *see id.* at 187 (report from Dr. Leopoldt reflecting above findings symptoms and also including "Psychomotor agitation or retardation [§ 12.04(A)(1)(d)]").

The focus of this appeal is, rather, on the functional criteria in paragraph B of the listing. To be deemed disabling, a depressive disorder substantiated under paragraph A must result in at least two of four specified limitations:

1. Marked restriction of activities of daily living; or

2. Marked deficiencies in maintaining social functioning; or

3. Marked deficiencies in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Subpt. P., App. 1, § 12.04(B). Doctor Leopoldt found that plaintiff's disorder satisfied limitations 2, 3, and 4. *See* R. Vol. II, at 189. Thus, plaintiff would meet the listing unless two of Dr. Leopoldt's findings were rejected. [3]

---

[3] Plaintiff does not contend that he satisfies the limitation in § 12.04(B)(1).

In fact, the administrative law judge (ALJ) rejected all three salient findings by Dr. Leopoldt, holding that plaintiff did not meet any of the § 12.04(B) criteria. The critical question here, therefore, is whether the ALJ gave "'specific legitimate reasons' for doing so." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (further quotation omitted)). If at least two of Dr. Leopoldt's findings were properly rejected, plaintiff's challenge to the denial of benefits must fail.

Initially, Dr. Leopoldt provided his findings merely by circling criteria listed in a form letter, without giving any supporting explanation.[4] R. Vol. II, at 187, 189. This was particularly problematic in that the fairly superficial and generally positive comments in his treating notes, *see id.* at 190-215, did not translate to the severe limitations he indicated on the letter. At the January 2002 administrative

---

[4] It appears that Dr. Leopoldt was working from a form incorporating an outdated version of § 12.04, which was revised, in conjunction with a general revision to the § 12.00 regulations, over a year earlier. *See* 65 Fed. Reg. 50746 (Aug. 21, 2000). However, a comparison between the 2000 and 2001 versions reveals that, while there were some changes in wording, the basic terminology of the § 12.04(B) criteria was retained. Moreover, neither party has mentioned this discrepancy much less argued that the analysis of Dr. Leopoldt's report and the ALJ's rejection thereof is materially affected by it. As will be seen, the ALJ's reasons for rejecting Dr. Leopoldt's findings (and hence the focus of plaintiff's arguments on appeal) relate to broad deficiencies in the rationales Dr. Leopoldt gave for his findings, not the precise wording of the findings themselves. We shall, therefore, likewise focus on the rationales stated for Dr. Leopoldt's findings and not engage in a detailed, sua sponte parsing of the language used in those findings in relation to the revised regulation.

hearing, the ALJ noted the need for substantiation/clarification of the conclusory findings reflected in the letter, and plaintiff's attorney secured an extension to obtain the information, *see id.* at 272-73, 306-07, 310-11. Asked to explain the basis of his findings, Dr. Leopoldt handwrote cursory comments on a letter reciting the § 12.04(B)(2)-(4) criteria he had previously circled. *Id.* at 28.

As noted above, Dr. Leopoldt found plaintiff had marked deficiencies in maintaining social functioning. "Marked" here "means more than moderate but less than extreme;" it signifies a limitation that "interfere[s] seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 12.00(C). "Social functioning," in turn,

> refers to your capacity to interact appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

*Id.*, § 12.00(C)(2).

When asked to substantiate his finding on this point, Dr. Leopoldt wrote the following notation: "withdraws socially–interacts mainly with family–very guarded [with] strangers." R. Vol. II, at 28. The ALJ, however, noted that "Dr. Leopoldt's progress notes reflect the claimant [who is a Mormon minister] is able to give blessings to fellow church members at the hospital"; that plaintiff "participates in activities with his son such as elk hunting and playing guitar"; and that plaintiff "reports that he gets along with other family members and usually visits with family or friends every two weeks." *Id.* at 16 (citations omitted). In addition, the ALJ had previously noted that plaintiff "is active in his church" and "is able to assist his wife with her transcription business by picking up tapes and delivering the typed notes." *Id.*

On appeal, plaintiff contends the ALJ "did not give specific and legitimate reasons for discounting Dr. Leopoldt's opinion" but, rather, merely "gave blanket statements." Aplt. Br., at 5. Actually, the points noted by the ALJ are much more specific than the bald generalizations offered by Dr. Leopoldt, and they derive from plaintiff's own statements. Indeed, plaintiff acknowledged additional social activity that the ALJ did not include in his summary, such as weekly shopping and talking with family and friends by phone three to four times a week. *Id.* at 67-68. Moreover, while under treatment by Dr. Leopoldt, plaintiff noted a three-month attempt to work at a wood shop, on a team assembling pre-fab materials, and did

not suggest any difficulty getting along with coworkers or supervisors; rather, physical difficulties ended this effort. *Id.* at 84-85, 206-08, 248, 255, 269-70.

In an attempt to bolster Dr. Leopoldt's finding, plaintiff emphasizes that he did not attend his father's funeral "because he could not handle it emotionally," and that he had had some "difficulty with his daughter." Aplt. Br. at 5. The former singular episode says little if anything about response to more routine stresses and was recited in a progress note otherwise reflecting that plaintiff's condition was "responding" to treatment and that his "affect [is] brighter," *id.* at 203. Similarly, references to various difficulties encountered by plaintiff's daughter occur in notes indicating that he was "not manifestly depressed," *id.* at 204 (where plaintiff reports daughter dropped out of school); that he "continues to do well" and has an "affect [that] remains bright," *id.* at 196 (where plaintiff reports concern about daughter, who appears depressed), and that he is "doing well generally" with a "bright, pleasant" affect, *id.* at 192 (where plaintiff reports daughter had been assaulted) – none of which reflect a serious impairment of his ability to cope with what undoubtedly were difficult family circumstances. More generally, by the disability onset date and thereafter, Dr. Leopoldt's notes consistently reflect a stabilization of plaintiff's condition and do not suggest a detrimental effect on his social functioning.

In sum, Dr. Leopoldt's finding that plaintiff's depression disorder gave rise to marked deficiencies in social functioning was based on conclusory statements contrary to the doctor's own records and relevant facts recited by plaintiff himself. On the record before us, the ALJ was free to reject Dr. Leopoldt's opinion. *Cf. Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (affirming ALJ's rejection of treating psychologist's opinion regarding marked impairment of claimant's capacity for interpersonal interaction for similar reasons).

Doctor Leopoldt's basis for finding repeated episodes of decompensation consists of conclusory and unwarranted speculation from an inaccurate factual premise. He explained his finding by noting "frequent job changes in past – despite being mostly menial jobs – can't handle stressful situation." *Id.* at 28. Plaintiff's reported job history from 1983 to 1995, however, included only four employers over this twelve-year period, with the last job continuing for a span of nearly seven years. *Id.* at 76. That is not an unstable employment record. Further, plaintiff took the last position with Wal-Mart because it was a "better job" than working as a lube technician, *id.* at 84; only quit the Wal-Mart job when his physical limitations made it impossible for him to perform, *id.* at 69, 84; and, as discussed above, attributed the failure of his later work attempt at the wood shop to his physical limitations, not depression. Thus, plaintiff's own explanation of

his work history undercuts the speculative inference drawn by Dr. Leopoldt that his job changes were necessitated by reactions to stress.

Moreover, Dr. Leopoldt's treatment notes do not indicate that plaintiff's depression would repeatedly leave him unable to handle common workplace stresses. He never reported any recommendation against working, and at various points he noted plaintiff's engagement in work and work-like activities with no suggestion that it had caused or would cause deterioration in plaintiff's condition or decompensation during the activity. *See, e.g. , id.* at 197 (conducting blessings for church members in hospital), 198 (helping wife with transcription business by making pickups and deliveries), 207-08 (working at wood shop).

Accordingly, we cannot say the ALJ erred in rejecting Dr. Leopoldt's opinion regarding decompensation for lack of support in the record. Given that conclusion and our similar holding with respect to the social-functioning factor, which together preclude a favorable determination under the listing for depression, plaintiff cannot prevail on the basis of the particular challenge he has raised on this appeal. We consequently need not reach the other § 12.04(B)(3) criterion

disputed here, regarding plaintiff's ability to maintain concentration, persistence, or pace.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge