**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MELANIE JEAN KAY,

      Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 04-4104
(D.C. No. 1:02-CV-65-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Melanie J. Kay appeals from an order of the district court affirming the Commissioner's decision denying her application for Social Security disability and Supplemental Security Income benefits. Appellant filed for these benefits on June 26, 2000, alleging disability based on fibromyalgia, chronic depression, and a learning disability. Following a *de novo* hearing, the administrative law judge (ALJ) determined appellant retained the residual functional capacity (RFC) to perform light, semi-skilled work, including her past relevant work as a cashier/checker, and therefore concluded she was not disabled at step four of the controlling sequential evaluative process. *See generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

Appellant raises three issues on appeal: that the ALJ erred by not adopting the medical opinions of Dr. Chris Ghicadus, her treating physician; that the ALJ erred by failing to make certain required findings regarding her mental impairments, and that the ALJ erred by failing to address her mental impairments

in his RFC finding. Concluding that reversal is required on the first issue, we need not reach the second and third issues.

Dr. Ghicadus was one of a group of medical professionals at Davis Behavioral Health, Inc., that treated appellant numerous times from December 1999, through October 2001. Dr. Ghicadus treated appellant a number of times personally and also had access to his colleagues' notes on their treatment sessions. Under 20 C.F.R. §§ 404.1502 and 416.902, a treating source is a physician who the claimant sees "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." While the ALJ did not make a specific finding regarding whether he considered Dr. Ghicadus to be a "treating source" under the regulations, it seems clear the doctor would qualify as such as one of appellant's treating physicians.

Dr. Ghicadus's evaluation consists of three pages rating appellant's limitations in twenty work-related categories. The evaluation form instructs the evaluator to choose among six descriptions for each category: no limitation, slight limitation, moderate limitation, marked limitation, extreme limitation, or unknown. App. at 254. Dr. Ghicadus evaluated appellant as having marked limitations in six of the rated categories: "the ability to understand and remember detailed instructions," "the ability to carry out detailed instructions," "the ability

to work in coordination with or in proximity to others without being distracted by them," "the ability to complete a normal workweek without interruptions from psychologically based symptoms," "the ability to perform at a consistent pace with a standard number and length of rest periods," and "the ability to respond appropriately to changes in the work setting." *Id*. at 254-55. A "marked" limitation is defined as severely limiting but not precluding the ability to function in an area. *Id*. at 254. Appellant was also evaluated as having moderate limitations in nine other areas.

Dr. Ghicadus was also asked to evaluate the severity of appellant's impairments by indicating to what degree four broad functional limitations existed as a result of her mental disorders. He marked that appellant's mental disorders caused moderate restriction on her activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace; but that there was insufficient evidence regarding any repeated episodes of decompensation. *Id*. at 256.

"An ALJ should '[g]enerally, . . . give more weight to opinions from [claimant's] treating sources.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (alterations in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (following 20 C.F.R. § 404.1527(d)). If an opinion fails on one of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *4). Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted). "[I]f [an] ALJ rejects [a treating source's opinion] completely, he must . . . give 'specific, legitimate reasons' for doing so." *Id.* (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)) (further quotation omitted).

It is not possible to quantify precisely what weight the ALJ accorded Dr. Ghicadus's evaluation, but it is clear that he did not consider it controlling. The ALJ stated that he had "given [it] less weight than the examination conducted

by Dr. Elizabeth Allen . . . because Dr. [Ghicadus's] opinion is not consistent with the [appellant's] work history, and general mental capability as determined by the objective testing performed by Dr. Allen."[1]  App. at 47.  It is also evident from the ALJ's questioning of the vocational expert that the ALJ did not accept several of Dr. Ghicadus's specific, and potentially dispositive, findings.  The ALJ presented the vocational expert with a hypothetical regarding appellant's ability to perform her past relevant work.  In his hypothetical, the ALJ listed a number of mental limitations for the hypothetical claimant; none of which were "marked" limitations.  For instance, in the ALJ's hypothetical, he asked the vocational expert to envision a claimant who had no limitations in her ability to follow simple instructions and moderate limitations in her ability to follow detailed instructions.  This portion of the hypothetical is in direct conflict with Dr. Ghicadus's evaluation that appellant had moderate limitations in understanding, remembering, and carrying out simple instructions, and marked limitations in understanding, remembering, and carrying out detailed instructions.[2]

---

[1]     We note that the report of the examination that the ALJ refers to as having been conducted by Dr. Allen was also signed by a Dr. Sue Roberts.  We will continue to refer only to Dr. Allen for consistency with the ALJ's decision.

[2]     In her opening brief appellant claims that "[w]hen asked, the vocational expert stated that a person would not be able to sustain employment with the limitations assessed by Dr. Ghicadus."  Aplt. Opening Br. at 19.  The transcript of this portion of the hearing before the ALJ shows that the vocational expert was questioned regarding this subject but records the substantive portion of her

(continued...)

The ALJ's rationale for discounting Dr. Ghicadus's evaluation consisted of two points: that the doctor's evaluation was inconsistent with appellant's "work history, and general mental capability as determined by the objective testing performed by Dr. Allen." App. at 47. The ALJ made no effort to explain what portions of appellant's work history or Dr. Allen's report he felt were in conflict with Dr. Ghicadus's evaluation. This lack of specificity is especially problematic since Dr. Ghicadus's evaluation consisted of many findings regarding particular areas of mental and social functioning; Dr. Allen's report made no specific findings regarding the areas of mental and social functioning evaluated by Dr. Ghicadus; and any conflict between the two doctors' determinations, if it exists, is not obvious. The "Occupational Information" section of Dr. Allen's report states that appellant was unemployed and receiving financial aid, that she had held a number of part-time jobs, and that she told Dr. Allen: "If I get hired, they think I'm normal at first. I start getting these looks, and their personality changes to me. They expect me to be fast and smart." *Id*. at 152. Also, Dr. Allen tested appellant as having a verbal IQ of 77, and as achieving her lowest IQ sub-test scores on the "Information" and "Arithmatic" verbal sub-tests. *Id*. at 155. Dr. Allen also observed that "when situations become even moderately complex

[2](...continued)
answers as "INAUDIBLE." App. at 306.

and demanding, [appellant] is easily disorganized and rendered out of control."

*Id*. at 153. These portions of Dr. Allen's report do not conflict with

Dr. Ghicadus' findings, in particular his determination that appellant had marked

limitations understanding and carrying out detailed instructions. Since the ALJ's

findings were insufficient to justify discounting a treating source's medical

opinion, we must remand.

Our decision to remand on the basis of appellant's first point makes

reveiew of her remaining points unnecessary. The form and content of the ALJ's

findings regarding appellant's mental impairments, and his treatment of the same,

are intimately related to the form and content of the ALJ's findings regarding

Dr. Ghicadus's evaluation, and the form of all three will likely be modified on

remand. We do note, however, that appellant claims in her second point that the

ALJ did not "specifically evaluate four functional areas: activities of daily living;

social functioning; concentration, persistence, or pace; and episodes of

decompensation" as required by 20 C.F.R. § 404.1520a(c & e). Aplt. Opening Br.

at 15. While respondent argues that such findings are required only in regard to

the determinations made by the ALJ at steps two and three of the sequential

evaluative process, we would caution that the absence of those specific findings

certainly diminishes this court's ability to discern the ALJ's intent and reasoning

at step four and to provide meaningful review.

-8-

That said, we REVERSE the judgment of the district court and REMAND with directions to remand the case to the agency for further proceedings consistent with this opinion.

Entered for the Court


John C. Porfilio
Circuit Judge