**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARIA D. MARTINEZ,

       Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

       Defendant-Appellee.

No. 08-2197
(D.C. No. 6:07-CV-00566-MV-CG)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

Mrs. Maria D. Martinez appeals from the district court's judgment

affirming the Commissioner's denial of her applications for disability insurance

and supplemental security income benefits under the Social Security Act. Taking

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

The parties are familiar with the underlying facts, so we provide only a brief summary. Mrs. Martinez was born in 1965, completed high school and some post-secondary classes in computer bookkeeping, and has past work experience as a cafeteria manager, photographer, customer service representative, fast food manager, and waitress. She suffers from adult-onset Type II diabetes mellitus and has a history of hypertension and cardiomyopathy.[1] She regularly presented herself at emergency rooms, mostly with elevated blood pressure readings, and has been followed by a cardiologist, Dr. Michael Gurule, since 2003. Numerous echocardiogram studies have demonstrated mostly global hypokinesis with ejection fractions of 30-35%.[2] In August 2005 she received a pacemaker after complaints of syncope (i.e., fainting) led to the discovery of a significantly depressed left ventricular ejection fraction of 20%. In several follow-up visits thereafter, Dr. Gurule found that although her blood pressure was at times still slightly suboptimal, she was doing well overall. In December 2005, he adjusted her pacemaker after it falsely activated in response to elevated activity levels, including an attempt to dance at a family birthday party.

---

[1]    Cardiomyopathy is disease of the heart muscle. *See Stedman's Med. Dictionary* 290 (27th ed. 2000) (*Stedman's*).

[2]    Hypokinesis is "[d]iminished or slow movement." *Stedman's* 861. Ejection fraction refers to the fraction "of the blood contained in the ventricle at the end of disastole that is expelled during its contraction, . . . normally [55%]." *Id.* at 710-11.

Based on what she described as congestive heart failure, hypertension, and diabetes mellitus, Mrs. Martinez filed the applications for benefits described above, alleging an onset date of July 31, 2005. Her applications were denied initially and upon review, and she requested and received a hearing before an administrative law judge (ALJ) on May 4, 2006. She appeared at the hearing without a representative and offered testimony. Among other things, Mrs. Martinez said that she often used her husband's cane for walking. A vocational expert (VE) also gave testimony. At the close of the hearing, Mrs. Martinez told the ALJ that she had a doctor's appointment the next day, so the ALJ agreed to leave the record open for the submission of additional medical evidence. Mrs. Martinez submitted a letter authored by Dr. Gurule dated May 8, 2006, and it was made part of the record.

In her written decision, the ALJ applied the familiar five-step sequential evaluation process used in social security matters, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing the process), and found at step four that Mrs. Martinez retained the residual functional capacity (RFC) "to perform sedentary work activity with the ability to lift approximately nine pounds, stand one and one-half hours in an 8-hour day, and walk two and one-half hours in an 8-hour day." App. I at 20. Based on this RFC and the hearing testimony of the VE, the ALJ found that Mrs. Martinez could perform her past job as a customer service representative, but none of her other past work. At step five, the ALJ

made an alternate finding that with her RFC, Mrs. Martinez could perform several jobs at the sedentary level, identified by the VE, that exist in significant numbers in the national economy: information clerk, receptionist, and telemarketer. Accordingly, the ALJ found that Mrs. Martinez was not disabled within the meaning of the Social Security Act. After unsuccessful appeals to the Appeals Council and the district court, Mrs. Martinez has brought this appeal.

## II. Discussion

Mrs. Martinez raises three issues on appeal: (1) the ALJ did not provide a legally sufficient explanation for rejecting the opinion set forth in Dr. Gurule's letter of May 8, 2006, and should have recontacted him; (2) the ALJ's failure to make explicit findings regarding the physical and mental demands of Mrs. Martinez's past relevant work as a customer service was not, as the district court concluded, harmless error; and (3) substantial evidence does not support the ALJ's finding at step five. We address the issues in order, bearing in mind that "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### A. Dr. Gurule's letter of May 8, 2006

Mrs. Martinez's first issue concerns the ALJ's treatment of Dr. Gurule's letter dated May 8, 2006. Dr. Gurule wrote:

-4-

The patient is a 40-year-old female who carries a history of hypertensive cardiomyopathy but normal coronaries. She presented with hypertensive urgency as well as nonsustained ventricular tachycardia[3] with syncope and severely depressed ejection fraction, last reported at 20%.

She underwent an AICD defibrillator pacemaker implantation last year and has been relatively stable. She had two inappropriate discharges of her defibrillator late last year which required re-programming of the defibrillator. Overall, she has done better. The last blood pressure reading available to us indicates she is doing well on her blood pressure medication.

The patient has asked a letter be provided on her behalf regarding her ability to work in the near future. At this point, because of the patient's severe cardiomyopathy, in the setting of ventricular tachycardia with syncope and a defibrillator, I believe it would be difficult for her to perform any kind of sustained level of work and/or activity. She is unable to do any type of heavy exertion, but I suspect her level of function would be minimal in terms of employment, not only because of physical stress but emotional stress as well that may be involved in standard employment.

App. I at 225 (footnote added).

The ALJ's complete evaluation of Dr. Gurule's letter was: "Subsequent to the hearing, the claimant submitted a medical report from Dr. Gurule dated May 8, 2006[,] which indicates that overall, the claimant has done better . . . . While she is unable to do heavy exertion, the undersigned finds the claimant capable of performing sedentary level work." *Id.* at 21.

Mrs. Martinez argues that the ALJ failed to set forth "specific, legitimate reasons," as required under *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996),

---

[3]    Tachycardia is the "[r]apid beating of the heart, conventionally applied to rates over 90 beats/min." *Stedman's* 1782.

for rejecting Dr. Gurule's opinion, which she characterizes as an opinion that she "would be unable to sustain <u>any</u> activity due to physical and mental stress that would prevent standard employment," Aplt. Br. at 16. This overstates Dr. Gurule's opinion. He wrote that because of her physical condition, he "*believe[d]* it would be *difficult* for her to perform any kind of sustained level of work and/or activity." App. I at 225 (emphasis added). He then opined that she could not "do any type of heavy exertion," *id.*, and added that he "*suspect[ed]* her level of function would be *minimal* in terms of employment, not only because of physical stress but emotional stress as well that may be involved in standard employment," *id.* (emphases added). Thus, the only portion of his letter that offered any concrete medical opinion was that she could not "do any type of heavy exertion." *Id.* The ALJ agreed with this opinion, finding that Mrs. Martinez was capable only of work at the sedentary exertional level. The remainder of Dr. Gurule's letter offered only generalized statements that it would be "difficult" for her to sustain work activity and that he "suspect[ed]" only "minimal" functional levels "in terms of employment." *Id.* These latter statements are equivocal, do not indicate conditions that preclude work, and are not inconsistent with the ALJ's finding that Mrs. Martinez could perform sedentary work. Therefore, the ALJ was not required to give "specific, legitimate reasons" for rejecting them because they were not inconsistent with the ALJ's RFC finding. *See Watkins*, 350 F.3d at 1301 (noting ALJ's duty to "give specific,

legitimate reasons" when "reject[ing a medical opinion] completely") (quotations omitted); *cf. Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (explaining that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

We also reject Mrs. Martinez's contention that the ALJ should have recontacted Dr. Gurule to obtain clarification of the opinions set forth in his letter. An ALJ is obligated by regulation to "recontact [a] claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citing 20 C.F.R. § 404.1512(e)). The obligation arises "when the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912 (e)(1). None of these conditions is present with respect to Dr. Gurule's letter. First, the letter contains no conflict or ambiguity and it is not incomplete. If Dr. Gurule was of the opinion that Mrs. Martinez's impairments precluded all work, as she appears to maintain in her brief, then he had an adequate opportunity to put that in his letter, which was prepared specifically for her claim. The careful, guarded expressions Dr. Gurule used in his letter make evident that he was not of such an opinion. In fact, at the hearing, the ALJ told Mrs. Martinez that she could tell

Dr. Gurule about the three jobs the VE identified, suggesting that Dr. Gurule could opine as to whether her medical conditions would prevent her from performing those jobs. Second, Mrs. Martinez has not argued, and it does not appear, that Dr. Gurule's letter was not "based on medically acceptable clinical and laboratory diagnostic techniques," thus triggering the obligation to recontact him. *Id.* Accordingly, we conclude that the ALJ was not obligated to recontact Dr. Gurule.

## B. The ALJ's step-four finding

The district court concluded, and we agree, that at step four of the sequential evaluation process, the ALJ's failure to make explicit findings on the record regarding the physical and mental demands of Mrs. Martinez's past relevant work as a customer service representative was legal error under *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). However, the court considered the error harmless in view of its affirmance of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy that Mrs. Martinez could perform given her RFC for sedentary work. Because we conclude, as discussed in the next section, that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four). Contrary to Mrs. Martinez's argument, her capacity to perform the specific requirements of a past sedentary

job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes.

**C. The ALJ's step-five finding**

Mrs. Martinez's final contention is that substantial evidence does not support the ALJ's finding at step five. She initially focuses on a number of errors the VE allegedly made and argues that because those errors reflect negatively on the VE's credibility, we should question the ALJ's reliance on the jobs the VE identified at step five. We disagree. She first alleges the VE testified that her prior customer service job did not require walking or standing, which she claims is inconsistent with the description of that job in the Dictionary of Occupational Titles (DOT),[4] DOT # 239.362-014, on which the VE relied, and is contrary to the requirements of Social Security Ruling (SSR) 96-9p, 1996 WL 374185, which concerns an RFC for less than the full range of sedentary work. However, our review of the hearing transcript indicates that the VE said the customer service job did not require standing and walking for six hours in an eight-hour day, not that it required no walking or standing at all. *See* App. I at 276 ("Q[:] Okay, so are you saying the customer service rep. does not have to do walking and standing

_____

[4]     U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991).

six in an eight-hour day?  A[:] Correct.").  Thus, there was no misstatement that might affect the VE's credibility.

Mrs. Martinez next refers us to the VE's citation to various DOT numbers for three of her prior jobs.  As to her prior jobs as cafeteria manager and fast food manager, the VE testified that the DOT number was 187.167-016.  While Mrs. Martinez is correct that this number does not exist in the DOT, the correct DOT number for those jobs is 187.167-106.  Thus, the VE obviously transposed the "1" and the "0" in the last portion of the number, a minor error that does not implicate the VE's credibility to give testimony as to jobs Mrs. Martinez could perform at step five.  Mrs. Martinez also claims that the DOT number the VE gave for her prior waitress job, 311.477-018, describes a "bar waitress," not the job she performed.  However, the work history report she completed shows that she worked as a waitress at a "bar and grill" in 1992.  We see no credibility implications in the VE's citation to DOT # 311.477-018.[5]

Mrs. Martinez's next credibility point concerns the hypothetical on which the VE based his testimony that Mrs. Martinez could perform the three sedentary jobs that the ALJ relied on at step-five.  A close look at the hearing transcript reveals that after the ALJ described Mrs. Martinez's medical conditions, the VE

_____

[5]    In relevant part, the description for DOT # 311.477-018 is:  "Serves beverages to patrons seated at tables in bar or cocktail lounge."

began to discuss whether she could return to any of her past jobs, when the ALJ interrupted:

> Q: Okay.  Could I stop you for just a second?  I did not provide you with the exertional limitations, did I?  The sitting for 10 minutes, standing for --
> A.  No, you just --
> Q.  Standing for an hour and a half.
> A.  You said light activities.
> Q.  Okay, standing for an hour and a half in an eight-hour day. . . . Walking for two and a half hours in an eight-hour day.  However, walking with a cane and lifting approximately nine pounds.

App. I at 275.  After this exchange, the VE discussed Mrs. Martinez's past work and, when asked to apply the same limitations to other work, identified the three jobs the ALJ relied on at step five.

Mrs. Martinez contends that the hypothetical included a restriction to ten minutes of sitting, yet sedentary jobs require sitting for about six hours in an eight-hour workday under SSR 83-10, 1983 WL 31251, at *5.  As we read it, the hypothetical starts after the VE said, "You said light activities."  The ALJ started over at this point, and the hypothetical did not include a limitation to sitting for ten minutes.  Thus, we see no credibility implications for the ALJ's step-five findings in the VE's identification of several sedentary jobs Mrs. Martinez could perform.  Our conclusion is buttressed by the fact that the RFC the ALJ adopted in her written decision omits a sitting restriction, thus tracking the exertional limitations in the hypothetical to the VE as we view it, and there is no record medical evidence supporting such a restriction.

Mrs. Martinez's final point pertaining to the VE's credibility concerns the limitation in the ALJ's hypothetical to walking for 2.5 hours with a cane. She observes without discussion that, under SSR 85-15, "reaching, handling, fingering, and feeling require progressively finer use of the upper extremities to perform work-related activities," 1985 WL 56857, at *7, and she opines that the need to use a cane precludes sedentary work because "one needs two hands free to carry some objects in sedentary jobs," Aplt. Br. at 31. While we do not doubt that a claimant limited to walking with a cane might not be able to perform some sedentary jobs for the reasons Mrs. Martinez has indicated, she has advanced no argument that any of the three sedentary jobs the VE identified—information clerk, receptionist, and telemarketer—are so affected. Thus, this aspect of her argument regarding the VE's credibility has no weight.

Moving away from the VE's credibility, Mrs. Martinez takes issue with the ALJ's failure to ask the VE if his opinion was consistent with the DOT, as required by SSR 00-4p, 2000 WL 1898704, at *4 ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT."). But she has not identified, nor do we see, any such conflict inherent in the VE's response (other than her view that the hypothetical contained a sitting limitation, with which we disagree) or about which the ALJ should have inquired, so we consider the ALJ's failure to be

-12-

harmless.  *Cf. id.* (an ALJ must resolve conflicts before relying on VE evidence to support a disability determination).

The final point Mrs. Martinez makes appears to be that she could not perform the full range of sedentary work because she can lift less than ten pounds, can stand for less than two hours, and needs to use a cane.  Although her contention of error is unclear, we note that the ALJ specifically stated that Mrs. Martinez was unable to perform the full range of sedentary work, which precluded application of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appx. 2, to direct a finding that she was not disabled.  *See* App. I at 22.  Consequently, the ALJ enlisted the assistance of the VE to consider these very limitations.  This was proper procedure.  *See* SSR 96-9p, 1996 WL 374185, at *9.  Moreover, regarding her alleged need to use a cane, SSR 96-9p requires supporting "medical documentation" for such a restriction.  *Id.* at *7.  There is no such documentation in the record, and the ALJ's final RFC did not include a restriction to walking with a cane.  Indeed, Mrs. Martinez testified that her doctor had not prescribed a cane and that the cane she used belonged to her husband.

In addition to her specific arguments, Mrs. Martinez asks us to give special consideration to the fact that she appeared pro se at the hearing before the ALJ. We have done so.  Having reviewed the hearing transcript, we observe nothing that causes us concern that she was treated unfairly or was at an unfair disadvantage when compared with counseled claimants.

### III. Conclusion

For the foregoing reasons, we conclude that substantial evidence supports the Commissioner's decision and the correct legal standards were applied. The judgment of the district court is therefore AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge