FILED
United States Court of Appeals
Tenth Circuit

May 25, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAUL E. SPAULDING,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant-Appellee.

No. 09-6171
(D.C. No. 5:08-CV-00757-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **PORFILIO**, and **MURPHY**, Circuit Judges.

Paul E. Spaulding appeals from a district court order affirming the decision

by the Commissioner of the Social Security Administration (the "Commissioner")

denying his application for Social Security disability benefits. He alleged

disability based on diabetes, diabetic neuropathy, diabetic retinopathy,

hypertension, chronic obstructive pulmonary disease, obesity, arthritis, mitral

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

regurgitation, obstructive sleep apnea, shoulder and hand problems, and pain. The agency denied his application initially and upon reconsideration.

Spaulding subsequently received a de novo hearing before an administrative law judge ("ALJ"). The ALJ determined that Spaulding retained the residual functional capacity ("RFC") to occasionally lift or carry ten pounds, frequently lift or carry ten pounds, walk at least two hours in an eight-hour workday, and sit for at least six hours in an eight-hour workday. He found that Spaulding could not return to his past relevant work, but that there were a significant number of other jobs in the national economy that he could perform given his age, education, work experience, and RFC for a full range of sedentary work. Applying rule 201.21 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the grids"), the ALJ concluded that Spaulding was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, rendering the ALJ's decision final. Spaulding sought judicial review of the decision in federal court. Over Spaulding's objection, the district court adopted the magistrate judge's report and recommendation and affirmed the ALJ's decision. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse in part and remand to the district court with instructions to remand to the Commissioner with instructions for further proceedings as set forth herein.

**I**

We review the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the ALJ applied the correct legal standards. Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given his age, education, and work experience. See id. at 751.

**A**

On appeal, Spaulding raises a number of issues, some of which he did not preserve for our review. We have "adopted a firm waiver rule . . . that a litigant's failure to file timely objections to a magistrate's report and recommendation waives appellate review of both the factual and legal determinations." Key

Energy Res. Inc. v. Merrill (In re Key Energy Res. Inc.), 230 F.3d 1197, 1199-1200 (10th Cir. 2000) (quotation and alteration omitted).

Spaulding began his objection to the magistrate judge's report and recommendation with a blanket statement that he "reassert[ed] all the arguments made [in his opening brief] and incorporat[ed] said brief by reference." Such an objection was insufficient to preserve specific issues for appellate review. "[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance." United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996).

A careful review of both the initial district court brief and the objection persuades us that the only issues Spaulding specifically preserved and now raises on appeal are: (1) whether the ALJ provided a proper discussion of the findings of Spaulding's doctor concerning manipulative limitations in the use of his left hand; (2) whether the ALJ appropriately applied the grids, given Spaulding's limitations; and (3) whether the ALJ improperly discounted his use of a cane.[1] Because the ALJ's failure to consider the doctor's findings may have led to an

---

[1] Spaulding's argument involving his use of a cane was not raised in his initial brief to the district court. But because the magistrate judge raised this issue and Spaulding included it in his objections to the magistrate judge's report and recommendation, we consider it preserved for purposes of appeal.

inappropriate application of the grids, we reverse and remand for further proceedings.

**B**

The grids comprise tables of rules that determine whether a claimant is disabled based on his RFC category, age, education, and work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2. But "[t]he grids should not be applied conclusively in a particular case unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (quotation and alteration omitted). Further, "the grids take into account only exertional or strength [limitations]." Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). Thus, as a general rule, the grids may not be used conclusively if the claimant has nonexertional limitations, such as pain or manipulative or postural limitations, that prevent him from performing the full range of work within a classification. See id.; Thompson, 987 F.2d at 1488.

Where a claimant suffers impairments causing a combination of exertional and nonexertional limitations that prevent him from performing the full range of work at a given exertional level, the Commissioner may not rely on the grids, but must give "full consideration" to "all relevant facts" in the individual case to determine if the claimant is disabled. 20 C.F.R. pt. 404 subpt. P, app. 2,

§ 200.00(e)(2). Relevant facts may include expert vocational testimony, if necessary. Id. There was no such individualized consideration of all the relevant facts here, and the Commissioner admits that the ALJ applied the grids to find Spaulding non-disabled at the sedentary exertional level.

**1**

Spaulding contends that he has two impairments causing non-exertional limitations that preclude application of the grids:  pain and manipulative limitations in his hands.  To preclude application of the grids, the pain would have to limit Spaulding's ability to perform a full range of sedentary work.  Cf. Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994).

The ALJ concluded that, although Spalding had pain-causing impairments that limited him to some degree, the limitations were not as severe as he contended and did not preclude him from performing sedentary work.  On our review, the ALJ's pain analysis is supported by substantial evidence.  Spaulding's allegations of non-exertional limitations relating to pain therefore do not preclude application of the grids.

**2**

Spaulding suffered two separate hand problems that he contends caused disability.  First, in early 2007, Spaulding lost consciousness and fell in the bathroom, injuring his left hand.  An X-ray showed small avulsion fractures of the third and fourth fingers.  But, as the ALJ noted, there was no evidence that these

fractures did not later heal, and Spaulding did not mention them at the hearing. The ALJ found that the finger fractures had only a minimal effect on his ability to work. This conclusion is supported by substantial evidence, and the fractures thus did not preclude application of the grids.

Spaulding's other problem with his left hand, however, is not so easily dismissed. On July 4, 2005, he was seen by a consultative examiner, Dr. Sidney Williams. Dr. Williams diagnosed Spaulding with diabetic neuropathy, which caused him "stocking/gloves loss of sensory modalities." Dr. Williams also opined that Spaulding had physical symptoms consistent with carpal tunnel syndrome. While his right hand was essentially normal, his left hand had weakened grip strength of "4/5 with reduced ability to manipulate small objects and tools as evidenced by picking up coins and paper clips during the course of [the] exam." The ALJ did not mention these manipulative limitations in his decision, much less give any reasons why they would not affect Spaulding's ability to perform a substantial number of sedentary jobs.[2] Even though "an ALJ is not required to discuss every piece of evidence[,] . . . [he] must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly

_____

[2] In his brief, the Commissioner offers a plethora of reason why the ALJ might have rejected this hand impairment or viewed it as non-serious. But the ALJ cited none of these reasons, and this court therefore cannot rely on them. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

Dr. Williams' evidence was significantly probative because, if the ALJ had accepted his opinions, application of the grids may have been inappropriate. We have long recognized that manipulative limitations, even involving only one hand or arm, preclude application of the grids where the claimant is otherwise limited to sedentary work. See Trimiar v. Sullivan, 966 F.2d 1326, 1333 (10th Cir. 1992); Frey, 816 F.2d at 515 n.1. A limitation in the use of the claimant's hands is particularly relevant when he can do only sedentary work:

> Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert ("VE")] may be needed to determine the effects of the limitations. "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance—in terms of relative numbers of jobs in which the function is required—as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work. The varying degrees of loss which can occur may require a decision-maker to have the assistance of a [VE].

Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *7 (1985).

For the foregoing reasons, we must remand for the ALJ to consider and discuss Dr. Williams' diagnosis of hand limitations and its effect on Spaulding's RFC. In the event the ALJ finds, based on Dr. Williams' report or other evidence, that Spaulding's hand limitations significantly affect his RFC, he should not rely upon the grids to find Spaulding disabled. Instead, the ALJ should obtain testimony from a VE to determine the effect of these limitations on Spaulding's ability to perform work within the national economy.

## C

We also address Spaulding's contention that the ALJ made a factually incorrect finding concerning his use of a cane. The ALJ found that Spaulding used a cane, but that none was prescribed for him. As Spaulding notes, however, a cane was provided to him by the Veterans Administration medical service as a "prosthetic appliance," apparently at the request of one of his physicians. Thus, assuming the V.A.'s provision of the cane as a prosthetic appliance constitutes a "prescription," the ALJ's assertion appears factually inaccurate.

Were this the only error in this case, we would hesitate to remand for two reasons. First, the legal issue does not turn on whether a cane was "prescribed" for Spaulding, but whether a cane was "medically required." See SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (discussing medical necessity standard). Spaulding does not point to specific record evidence that would satisfy the medical necessity standard.

Second, the ALJ provided an alternative reason for concluding that Spaulding's alleged need for a cane would not affect his RFC. In his decision, the ALJ noted that "the claimant was advised to gradually increase his exercise tolerance until he could walk briskly for an hour at least 3-4 times a week. It is reasonable to assume that medical personnel would not recommend brisk exercise to someone that has to use a cane to ambulate." Spaulding fails to challenge this finding.

Because we must remand on the issue of Spaulding's ability to perform the full range of sedentary work, however, the ALJ should also revisit Spaulding's use of a cane. In light of the fact that the cane was provided by the V.A. as a "prosthetic appliance,"[3] and considering that the Commissioner has the burden to establish at step five that there are jobs Spaulding can fulfill in the national economy, the ALJ should develop the record with evidence concerning medical necessity, if any, for use of the cane, and its effect on Spaulding's RFC.

_____

[3] While an ALJ obviously "doesn't have to include canes found on the street, crutches fished out of dumpsters, or eye patches picked up in costume shops" in his analysis, Lomax v. Astrue, No. 08 C 3540, 2010 WL 337654, at *15 (N.D. Ill. Jan. 29, 2010) (unpublished), this cane was made available by one of Spaulding's medical providers, apparently at his physician's request, suggesting medical necessity.

## II

This case is **REVERSED** and the case is **REMANDED** to the district court with instructions to **REMAND** to the Commissioner for further proceedings as set forth herein.

Entered for the Court

Carlos F. Lucero
Circuit Judge