NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2012
Decided July 20, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3191

| | |
|---|---|
| MICHAEL S. TRIPP,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>MICHAEL J. ASTRUE,<br> Commissioner of Social Security,<br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 10 C 3381<br><br>Arlander Keys,<br>*Magistrate Judge*. |

**O R D E R**

Michael Tripp, a 49-year-old former home remodeler and warehouse manager, applied for disability insurance and supplemental security income under the Social Security Act. He claims that an ankle injury has left him incapable of gainful employment. After an evidentiary hearing, an administrative law judge concluded that Tripp could perform unskilled sedentary work and the ALJ therefore denied benefits. The Appeals Council denied review of that decision, which the district court also upheld. Because substantial evidence supports the ALJ's decision, we affirm the denial of benefits.

Tripp broke his right leg and ankle in a January 2007 car accident. Medical images revealed multiple tibia and fibula fractures and displacement at the ankle mortise. A surgeon installed two plates and several screws to repair the damage. Tripp started with physical

therapy in March 2007. Diagnostic images taken in April confirmed satisfactory healing of one tibia fracture but only minimal healing of his fibula and a second tibia fracture. The images also revealed osteopenia (low bone-mineral density) in the ankle, with disuse osteoporosis noted as the likely cause. Already, though, Tripp "occasionally" was walking on the injured foot, and by May, when his ankle was next evaluated by his surgeon, he reported a "50% improvement" in symptoms. He suffered a setback in June after hurting his ankle while swimming, but his surgeon's treatment notes indicate that in mid-July he reported that his ankle was "60% better" than after the car crash.

Meanwhile, Tripp had applied for Social Security benefits at the end of June 2007. Earlier that month he had consulted with Dr. Thomas Rappette, a podiatrist. X-rays confirmed that the bones in Tripp's leg had healed, but Dr. Rappette concluded that Tripp eventually might need an ankle fusion or joint replacement because his ankle joint appeared to have collapsed and the articular cartilage was "pretty much void." In a report apparently prepared in conjunction with Tripp's application for benefits, Dr. Rappette noted that he walked with a cane and opined that his capacities to stand, walk, and turn were "more than 50% reduced." Tripp himself also said, in a standard-form "Activities of Daily Living" questionnaire, that he could stand and walk for up to an hour, but only with crutches.

That same month, and again in July and August, Tripp completed for his physical therapist a questionnaire about his ankle. Twice he reported that he was using "2 canes or crutches" and walking only indoors, but in August 2007 he disclosed his ability to walk one to three blocks without a cane, which he needed only for "long walks." Also in August a physician contracted by the Bureau of Disability Determination Services (the arm of the Illinois Department of Human Services tasked with making initial decisions on applications for disability benefits, *see* 42 U.S.C. § 421(a)(1); 20 CFR §§ 404.1613, 416.1013) examined the medical record and projected that, by the January 2008 anniversary of Tripp's auto accident, he should be able to sit, or stand and walk, for six hours of an eight-hour work day.

The state agency denied Tripp's application for supplemental security income in July 2007, and his application for disability insurance benefits in August 2007. After that his condition appeared to worsen, at least on paper. In another standard "Activities of Daily Living" questionnaire, which Tripp submitted to the state agency in October 2007 while his case was being reconsidered, he acknowledged that he was driving a car but said he needed crutches or two canes to stand, walk, and balance. That same month Tripp also consulted Dr. Vinod Motiani, an internist, who did not conduct any diagnostic tests but did write the state agency saying that Tripp could "stand for a few minutes and does need a crutch," and even with crutches could "barely walk, maybe 10 to 15 steps." Dr. Rappette then recorded in a November 2007 progress note that Tripp's ankle was "very painful and swollen" and had compressed further on the right side.

In December 2007, after reconsideration, the state agency again denied Tripp's applications for benefits. Tripp did not appear before the ALJ until 17 months later in May 2009, yet he submitted no medical evidence covering that period.[*] He was represented by a lawyer at the hearing (though not by the lawyer who represents him now). His hearing testimony comprises eight pages of transcript. Tripp had a crutch at the hearing, which he said he needed "most of the time." "A couple of steps," he testified, was the limit he could walk without the crutch, and 20 to 40 feet was as far as he could walk even with the crutch. He did not have difficulty sitting for long periods, he said, because he elevates his leg. A doctor, Tripp added, had told him not to lift more than five pounds. He conceded that he still was driving, although with difficulty. All of Tripp's testimony came in response to questions from the ALJ; Tripp's lawyer asked no questions.

A vocational expert was the only other witness. In response to several hypothetical questions, the expert testified that roughly four million jobs were available to Tripp in the Chicago area if he was capable of performing a full range of light work. That number would fall to about 8,500, the expert continued, if Tripp was limited by the use of a "hand-held assistive device" (SSA jargon for a crutch or cane, see 20 C.F.R. Pt. 404, Subpt. P, App. 1); those positions would be unskilled and sedentary, including work as a bench assembler, telephone order clerk, and surveillance system monitor. The vocational expert acknowledged, however, that no jobs were available to Tripp if his mobility was restricted to the extent he claimed.

The ALJ found that Tripp was not disabled and denied benefits. Applying the SSA's five-step evaluation process, see 20 C.F.R. § 404.1520(a), the ALJ concluded that (1) Tripp had not engaged in substantial gainful activity since his accident; (2) his ankle injury constituted a severe impairment; (3) this impairment did not meet or medically equal the definition of any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Tripp was incapable of performing his past work; and (5) he nevertheless retained the residual functional capacity to perform sedentary work that does not involve "crawling; climbing ladders, ropes and scaffolds; or more than occasional balancing, kneeling, stooping, crouching or climbing of ramps and stairs" – restrictions that are defined as "postural limitations" in SSR 96-9p. Although the ALJ did not say so explicitly, the decision necessarily includes an implicit finding that Tripp was not restricted to the use of a hand-held assistive device: although the ALJ noted that Tripp sometimes *used* crutches, he never acknowledged that Tripp *needed* them. The ALJ characterized Tripp's vocational outlook as sufficiently rosy, "even including a need for an assistive [device]

---

[*]In answering a March 2008 prehearing questionnaire from the Social Security Administration, Tripp asserted that he also suffered from previously undisclosed depression and anxiety. He volunteered to the ALJ that he was seeing a counselor for those impairments, but he made no effort to develop the record as to either and does not discuss them in this court.

to ambulate," but the ALJ refused to credit Tripp's testimony about the limiting effects of his ankle impairment because his account was undermined by his past reports to physicians and in questionnaires, the favorable progress reports from his physical therapist, and the residual functional capacity assessments from the state-agency physician and even Dr. Rappette.

The ALJ issued his decision in June 2009. In August, while Tripp's case was before the Appeals Council, he submitted a newly obtained medical report showing signs of degenerative disc disease in his middle and lower back. Tripp also submitted an August 2009 "report" from Fox Valley Orthopaedics. That handwritten document says this above an indecipherable signature: "Mr. Tripp suffers from chronic disabling pain follow an auto accident Jan 28th, 07. He is unable to maintain gainful employment due to his pain." And, finally, Tripp supplied an August 2009 progress note from Dr. Rappette, who concluded that Tripp was experiencing pain and swelling in his ankle from "significant osteoarthritis in the entire ankle joint bone." Dr. Rappette opined that the condition will worsen with time and that ankle fusion or joint replacement remain the only "legitimate" solutions for Tripp. Tripp's lawyer asked only that these materials be placed in his "file." After the Appeals Council denied review, Tripp unsuccessfully argued in the district court that the ALJ should have been required to reconsider his finding of no disability in light of the post-hearing submissions. Tripp does not repeat this contention on appeal, and thus he has abandoned his reliance on the new materials. *See, e.g.*, *Arnold v. Barnhart*, 473 F.3d 816, 820 n.2 (7th Cir. 2007); *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 808 n.2 (7th Cir. 2000).

In this court Tripp contends that the ALJ's finding that he could perform a range of sedentary work is not supported by substantial evidence. But rather than take issue with the ALJ's underlying determinations that his testimony was not credible and that he did not need a crutch or cane to walk, Tripp focuses on perceived shortcomings in the hypothetical questions posed to the vocational expert. The ALJ, Tripp maintains, did not properly consider how using a crutch would affect his ability to perform the unskilled, sedentary jobs identified by the expert. Noting that a claimant who uses a hand-held assistive device may, depending on the extent of impairment, be capable of the full range of unskilled sedentary work or incapable of performing any such work, Tripp asserts that the ALJ erred by failing to specify in his second hypothetical question the type of assistive device and how often or how long it was needed. Tripp does not dispute that someone with the postural limitations attributed to him by the ALJ can perform the positions identified by the vocational expert.

Tripp's focus on this issue is difficult to understand in light of the fact that the ALJ did not find that he needed an assistive device at all. Indeed, it is unclear whether Tripp understands that the ALJ did not include an assistive-device restriction in his determination of residual functional capacity. His opening and reply briefs simply assume that the ALJ was required to do so after acknowledging that he "uses crutches to ambulate at times." The ALJ

never suggested, however, that he thought Tripp's crutch was medically necessary. A finding of necessity must rest on "medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed," see SSR 96-9p; *Martinez v. Astrue*, 316 F. App'x 819, 826 (10th Cir. 2009) (non-precedential decision); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (non-precedential decision), and nowhere did the ALJ hint that such evidence might be present in the medical record.

In our view, the record adequately supports the finding of no medical necessity. The record is replete with references to Tripp's use of "crutches," "a crutch," or "a cane," but these mentions are traceable to his self-reports and to physicians' observations that he *presented* with an assistive device. Even the statement of Dr. Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp "does need a crutch," lacks the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by Tripp. Dr. Motiani, after all, saw Tripp only once, offered an opinion without conducting any diagnostic tests, and has no expertise in orthopaedics. And though no published appellate decision addresses the precise documentation a claimant must provide, the Third and Tenth Circuits in non-precedential decisions have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary. *See, e.g.*, *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (non-precedential decision) (provision of cane to claimant by Veterans Administration medical service at physician's request did not satisfy medical necessity standard); *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (non-precedential decision) (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity); *Howze*, 53 F. App'x at 222 (concluding that doctor's reference to "script" for cane and checking box on printed form corresponding to statement that "hand-held assistive device medically required for ambulation" was insufficient to establish medical necessity). Tripp does not identify, and we cannot find, any such statement in his medical records. Although Dr. Rappette opined in June 2007 that Tripp's abilities to stand and walk were more than 50% reduced, these deficits were not inconsistent with a finding that he was capable of sedentary work, which is limited to jobs requiring no more than two hours of standing and walking per day – less than half that required by light work, which can involve up to six hours of standing and walking. See SSR 83-10; *Keith v. Barnhart*, 473 F.3d 782, 784 n.4 (7th Cir. 2007).

AFFIRMED.